# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3816

_____

Fleet Boston Robertson Stephens,　\*
Inc., formerly known as BancBoston　\*
Robertson Stephens, a Massachusetts　\*
corporation,　\*
　\*
　　　　　Appellee,　\*
　\*　Appeal from the United States
　　　v.　\*　District Court for the District
　\*　of Minnesota.
Innovex, Inc., a Minnesota　\*
Corporation; AdFlex Solutions　\*
Inc., a Delaware corporation,　\*
　\*
　　　　　Appellants.　\*

_____

Submitted:  June 15, 2001

Filed:  August 30, 2001
_____

Before MURPHY, HEANEY, and BEAM, Circuit Judges.
_____

BEAM, Circuit Judge.

This case comes before us on appeal from the district court's[1] denial of a motion to stay proceedings and compel arbitration. We affirm.

## I. BACKGROUND

Fleet Boston Robertson Stephens, Inc. (Robertson Stephens), a multi-service brokerage firm and member of the National Association of Securities Dealers (NASD), commenced the underlying breach of contract action against AdFlex in an attempt to collect over $800,000 in fees and expenses it claimed it was owed for providing financial advice and assistance to AdFlex in AdFlex's merger with Innovex. The contract between the parties did not call for Robertson Stephenson to act as a broker for AdFlex securities. AdFlex, which has since merged with Innovex, disputes that it owes these monies for a variety of reasons and filed a motion to stay litigation and compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 - 14.

The essence of the dispute before this court is whether AdFlex was a customer of Robertson Stephens under the NASD Code. If the answer is yes, then, according to the NASD Code, Robertson Stephens has agreed to submit any claim by a customer to arbitration, thus, the motion to stay litigation and compel arbitration should be granted. If the answer is no, then there has been no agreement to submit to arbitration, and the litigation shall continue.

## II. ANALYSIS

In deciding whether to stay litigation and compel arbitration under the Federal Arbitration Act, a court must first consider whether the parties have agreed to arbitrate the underlying dispute. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

U.S. 614, 626 (1985). Here, the parties agree that the contract in dispute does not contain any agreement to arbitrate. Rather, AdFlex points to provisions of the NASD Code in support of its claim that the court should compel arbitration.

As a member of the NASD, Robertson Stephens is bound to follow the rules and regulations of the NASD, including the NASD Code. That Code, in pertinent part, requires NASD members to arbitrate disputes if they "aris[e] out of or in connection with the business of any member" and are "between or among members or associated persons and public customers." NASD Code of Arbitration Proc., § 10101. The Code further provides that the matter shall be submitted to arbitration upon the demand of the customer. Id. § 10301(a).

The district court summed up the issues thus:

> The parties here do not dispute that Robertson Stephens is an NASD member, that AdFlex is not an associate of Robertson Stephens, that the controversy arises in connection with the business of Robertson Stephens, that the contract does not contain an arbitration provision and that AdFlex has not waived any right to arbitration it may have had.

Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., No. 00-778, Order at 5 (D. Minn. Oct. 31, 2000). Thus, the only question is whether AdFlex is a "customer" of Robertson Stephens under the NASD Code. This question hinges upon whether the term "customer" applies only to those who received investment or brokerage services, or whether it also applies to those who received banking and financial advice, as AdFlex did in this case.

The NASD Arbitration Code does not define the term "customer." AdFlex points to the definition section of the NASD Manual which specifies, "The term 'customer' shall not include a broker or dealer." NASD Manual General Provisions § 0120(g). AdFlex argues that by negative inference this definition means a "customer"

-3-

is everyone who is not a broker or dealer. We agree with the district court that this definition is too broad. We do not believe that the NASD Rules were meant to apply to every sort of financial service an NASD member might provide, regardless of how remote that service might be from the investing or brokerage activities, which the NASD oversees.

Although not entirely clear, or consistent, other NASD Rules support a general definition of "customer" as one who receives investment and brokerage services or otherwise deals more directly with securities than what occurred here. The district court relied on a provision in the NASD Rules of Conduct–which outline the standards of conduct expected of NASD members when dealing with customers– that defines a "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member." NASD Rules of Conduct § 2270. Although that particular provision defines customer in one specific context, there are numerous other provisions in the NASD Rules of Conduct that support this definition of customer. See id. § 2230 (governing broker transaction confirmations); § 2260 (forwarding securities related information); § 2280 (investor education); § 2310 (investment recommendations); § 2320 (executing orders); § 2330 (maintaining customer's securities and accounts); §§ 2400-2460 (commissions on brokerage accounts and securities transactions); §§ 2700-2780 (securities distributions).[2]

Additionally, the NASD's Manual and Notices to Members states that the arbitration forum exists "[t]o assist in the resolution of monetary and business disputes

_____

[2]Apparently ignoring these provisions, AdFlex directs us to an isolated NASD Rule relating to membership and registration that defines a "customer" to include those receiving investment banking services. NASD Membership and Registration Rule § 1120(b)(1). This rule, which does not specifically deal with customer protection or relations, is insufficient to expand the definition of "customer" for purposes of the arbitration provision.

between investors and their securities firms (as well as between member firms)." NASD Manual & Notices to Members–Administrative–Profile of the NASD–Regulation of the Broker/Dealer Profession and Securities Markets–Arbitration and Mediation, *NASD Manual available at* http://secure.nasdr.com. This further supports the proposition that "customer" in the NASD Code refers to one involved in a business relationship with an NASD member that is related directly to investment or brokerage services.

Although other cases interpreting the term "customer" have in some ways taken a broad view of the term, in all of these cases there existed some brokerage or investment relationship between the parties. See, e.g., Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995) (holding that *investors* who had been defrauded by a representative of an NASD firm were customers of that firm under the NASD Code, despite the fact that they never opened formal accounts with the firm); Vestax Sec. Corp. v. McWood, 116 F. Supp. 2d 865, 869 (E. D. Mich. 2000) (noting that "*in the securities context*" courts have taken a broad view of "customer") (emphasis added); First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co., 65 F. Supp. 2d 1371, 1380-81 (S.D. Fla. 1999) (finding an *investor* was a customer of an NASD firm, when his account was maintained at a different brokerage firm, but a representative of the member firm managed the investor's account).[3] We decline to extend the definition where the business relationship did not include these activities.

---

[3]AdFlex cites Patten Securities Corporation v. Diamond Greyhound & Genetics, Inc., to support the proposition that a "customer" is not defined by an investor relationship with the NASD member. 819 F.2d 400, 406 (3d Cir. 1987). That case involved a claim by a securities issuer against an underwriter, who was an NASD member. Although the relationship between the two was not a broker/investor relationship, it still related directly to the issuance of securities, rather than banking advice, and is thus unavailing here.

In sum, while this is a close call, we do not believe the NASD Rules require a member to submit to arbitration in every dispute that involves its business activities with a non-member–as AdFlex's proposed definition of "customer" would require. We agree with the district court that "customer" does not include an entity such as AdFlex, which only received financial advice, without receiving investment or brokerage related services, from an NASD member. AdFlex correctly recognizes that, where the parties have agreed to arbitrate, there is a strong federal policy in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). However, this does not change the fact that one cannot be compelled to arbitrate her disputes unless she has agreed to do so. Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989) ("[The Arbitration Act] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."). Robertson Stephens did not, by virtue of its membership in the NASD, agree to arbitrate this type of dispute over fees for giving financial advice apart from investment or brokerage services.

## III.  CONCLUSION

Accordingly, we affirm the denial of the motion to stay litigation and compel arbitration.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-