## The O.N. EQUITY SALES COMPANY

v.

## Dean K. STEINKE, et al.

No. CV 07–3170 JFW(FFMX).

United States District Court,
C.D. California.

Aug. 27, 2007.

Marion H. Little, Jr., Michael R. Reed, Zeiger, Tigges & Little, LLP, Columbus, OH, for Petitioner O.N. Equity Sales Company.

Joel A. Goodman, Goodman & Nekvasil, P.A., Clearwater, FL, for Defendants Steinke et al.

WALTER, District Judge.

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [filed 7/13/07; Docket No. 20]**

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AS MOOT [filed 7/23/07; Docket No. 23]**

**ORDER VACATING SCHEDULING CONFERENCE**

On July 13, 2007, Defendants Dean Steinke, Elisa Hoffman, and Margarita Robres, as Beneficiary and Executrix of the Estate of Luis Robres, (collectively "Defendants") filed a Motion to Compel Arbitration. On August 6, 2007, Plaintiff The O.N. Equity Sales Company ("ONESCO") filed its Opposition. On August 13, 2007, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's August 20, 2007 hearing calendar and the parties were given advance telephonic notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I. Factual Background**

In 2003, Gary Lancaster ("Lancaster") organized the Lancorp Financial Fund Business Trust ("Lancorp Fund") and began to solicit investors through a private placement offering. Lancaster served as trustee of the Lancorp Fund. Individuals interested in purchasing "shares" in the Lancorp Fund were required to review the Private Placement Memorandum and execute a Subscription Agreement. Pursuant to the terms of the Subscription Agreement, the amount paid by investors for shares in the Lancorp Fund was initially

deposited into an escrow account and would be held in the escrow account until the closing date. By signing the Subscription Agreement, the investors agreed that they "may not cancel, terminate or revoke [the Subscription Agreement]." However, under the terms of the Private Placement Memorandum, the Lancorp offering was subject to "withdrawal, cancellation, or modification by [Lancorp] without notice." Each of the Defendants signed a Subscription Agreement in February of 2004.

Lancaster became a registered representative of Plaintiff ONESCO on March 23, 2004 [1] ONESCO is a full service retail broker-dealer with more than 1,000 registered representatives. Through its registered representatives, ONESCO offers a variety of investment products, including brokerage services, mutual funds, and variable insurance products.

After becoming a registered representative of ONESCO, Lancaster notified Defendants in April of 2004 that a material condition of their investment had changed, specifically, that Lancorp had replaced the insurance component on their proposed investment. At that time, Defendants were required to either confirm their agreement to invest in the Lancorp Fund and acknowledge the change in the insurance component, or request withdrawal of their funds. Shortly thereafter, each of the Defendants acknowledged the changes in the Lancorp offering and reconfirmed their subscriptions. In a letter dated June 14, 2004, Lancaster advised Defendants that the Lancorp Fund "officially became effective as of May 14, 2004." Defendants' Motion at Exhibit F.

In March of 2007, Defendants initiated an arbitration against ONESCO before the National Association of Securities Dealers, Inc. ("NASD") relating to their investment in the Lancorp Fund. On May 14, 2007,

ONESCO filed a Complaint with this Court for declaratory and injunctive relief against Defendants Specifically, ONESCO requests a declaration from this Court that "ONESCO has no obligation to arbitrate the NASD Actions" and "has no obligation to arbitrate any claims regarding or relating to the Lancorp Fund" and also seeks to enjoin Defendants from proceeding with the arbitration before the NASD. Complaint at ¶¶ 47, 50. In the present motion, Defendants move to compel Plaintiff to arbitrate before the NASD.

## II. Discussion

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *see also Litton Financial Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 208–09, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (quoting *AT & T Tech.*) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'"). In this case, Plaintiff and Defendants agree that the issue of whether an arbitration agreement exists between the parties is a matter for the Court, not an arbitrator, to decide. However, Plaintiff claims that it is entitled to discovery and an evidentiary hearing, while Defendants argue that the Court may decide the issue on a summary motion without discovery or a hearing. The Court agrees with Defendants and finds that

---

1. ONESCO terminated Lancaster on January 3, 2005.

based on the extensive briefing and evidence submitted by the parties, this issue can be resolved without further discovery or an evidentiary hearing. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Defendants move to compel arbitration on the grounds that Plaintiff is required to arbitrate under NASD Rules 10101 and 10301(a). Plaintiff argues that it is not required to arbitrate with Defendants because no written arbitration agreement exists. However, the NASD Rules do not require a written agreement to arbitrate. Relying on NASD Rules 10101 and 10301(a), numerous courts have held that "even if 'there is no direct written agreement to arbitrate ..., the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants.'" *World Group Securities, Inc. v. Sanders,* 2006 WL 1278738 (D.Utah May 8, 2006) (quoting *MONY Secs. Corp. v. Bornstein,* 390 F.3d 1340, 1342 (11th Cir. 2004)). "Rule 10101, entitled 'Matters Eligible for Submission,' provides 'for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association ... between or among members or associated persons and public customers, or others.'" *Bornstein,* 390 F.3d at 1343. Rule 10301 provides, in relevant part, that "[a]ny dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer." NASD Rule 10301(a).

■ "Based on these two sections, courts have fashioned a two-part test that must be satisfied to trigger the NASD arbitration requirement. First, the claim must involve a dispute between either an NASD-member and a customer, or an associated person and a customer. Second, the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person." *Sanders,* 2006 WL 1278738, at *4 (citing *Vestax Securities Corp. v. McWood,* 280 F.3d 1078, 1080 (6th Cir.2002)); *see also USAllianz Securities, Inc. v. Southern Michigan Bancorp, Inc.,* 290 F.Supp.2d 827 (W.D.Mich.2003).

Plaintiff argues that the foregoing NASD Rules do not apply to the arbitration claims brought by Defendants on the grounds that Defendants are not "customers" of ONESCO and the dispute does not "arise in connection with the activities of ONESCO" because the events underlying Defendants' claims occurred prior to Lancaster becoming a registered representative of ONESCO Specifically, Plaintiff narrowly construes Defendants arbitration claims as limited to alleged misrepresentations made by Lancaster in connection with Defendants' execution of the Subscription Agreements in February of 2004, and argues that because those misrepresentations occurred before Lancaster was a registered representative of ONESCO, ONESCO cannot be compelled to arbitrate those claims under NASD Rule 10301(a).

■ The Court disagrees with Plaintiff's narrow interpretation of Defendants' arbitration demand. The plain language of Defendants' First Amended Statement of Claim indicates that they seek redress not just for the alleged improper investments made by Lancaster, but also for the alleged failure of ONESCO to supervise him after March 23, 2004. A claim for failure to supervise clearly "arises in connection

with the business" of ONESCO for the purposes of Rule 10301(a). *See, e.g., US Allianz,* 290 F.Supp.2d 827; *Sanders,* 2006 WL 1278738; *Vestax,* 280 F.3d 1078.

■ Additionally, the actual investment using Defendants' funds was not made until May of 2004—two months after Lancaster became a registered representative of ONESCO. ONESCO argues that the relevant date is the date that the Defendants signed the "irrevocable" Subscription Agreements. However, pursuant to the terms of the Private Placement Memorandum and the Subscription Agreements, Defendants' money was held in an escrow account and the Lancorp Fund could cancel the Subscription Agreements and terminate the offering at any time prior to the initial closing date. As a result, there was no "sale of securities" until May of 2004. *See, e.g., Cohen v. Stratosphere Corp.,* 115 F.3d 695, 700–01 (9th Cir.1997). Moreover, in April of 2004, Defendants were required to reconfirm their subscriptions or withdraw their funds as a result of the change in the terms relating to the insurance component—an event which occurred while Lancaster was working as a registered representative of ONESCO. Accordingly, Defendants are "customers" of ONESCO for purposes of Rule 10301(a). *See, e.g., John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 57–60 (2d Cir.2001); *Sanders,* 2006 WL 1278738; *Getty v. Harmon,* 53 F.Supp.2d 1053, 1056 (W.D.Wash. 1999)

For all of the foregoing reasons, the Court finds that an arbitration "agreement" exists between the parties in the form of NASD Rule 10301(a), and that Defendants' claims are within the scope of that Rule. Accordingly, Defendants' Motion to Compel Arbitration is **GRANTED.** Plaintiff's Complaint is **DISMISSED without prejudice.**

In light of the foregoing, Plaintiff's Motion for Preliminary Injunction is **DE-** **NIED as moot** The Scheduling Conference, currently on calendar for September 10, 2007, is **VACATED.**

IT IS SO ORDERED.