The O.N. EQUITY SALES COMPANY, Plaintiff,

v.

Mark R. RAHNER and Leslie L. Rahner, individually and as Trustees of the Márk R. and Leslie L. Rahner Trust and the Mark R. Rahner OD PC Profit Sharing Plan, Defendants.

Civil Action No. 07–cv–01323–MSK–MJW.

United States District Court, D. Colorado.

Nov. 30, 2007.

Dennis J. Bartlett, Kristin Anderson, Kerr, Brosseau, Bartlett, O'Brien, LLC, Denver, CO, Marion H. Little, Jr., Michael R. Reed, Zeiger, Tigges & Little, LLP, Columbus, OH, for Plaintiff.

Joel A. Goodman, Goodman & Nekvasil, P.A., Clearwater, FL, for Defendants.

## MEMORANDUM OPINION AND ORDER COMPELLING ARBITRATION

MARCIA S. KRIEGER, District Judge.

THIS MATTER comes before the Court on the Defendants' Motion to Compel Arbitration (# 12), which seeks a determination as to whether the Defendants are entitled to compel arbitration under NASD Code of Arbitration Rule 10301. The parties filed several documents addressing this issue (# 7, # 13, # 14, # 24, # 30, # 32, # 33 # 39, # 43, # 45).[1] Also before the Court is the Plaintiff's appeal (# 40) from the Magistrate Judge's Order (# 38) which denied the Plaintiff's motion (# 10) to allow the parties to engage in discovery on the issue of whether the Defendants could compel arbitration. The parties filed several documents in conjunction with this issue (# 10, # 11, # 15, # 26, # 40, # 41, # 46, # 48). In addition, the Plaintiff filed a motion (# 28) under Fed.R.Civ.P. 56(f) asking the Court not to rule on the Motion to Compel Arbitration until after it has been given an opportunity to conduct dis-

---

1. The Court previously denied the Motion to Compel Arbitration as premature, but the Defendants subsequently renewed it. The Plaintiff elected not to renew its Motion for Preliminary Injunction (# 6) which addressed the exact same issue. The Plaintiff also did not renew its Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits (# 8). Therefore, the Court simply addresses the Motion to Compel Arbitration.

covery. This motion is also fully briefed (# 29, # 42, # 44, # 49). Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

For purposes of determining the instant motions and appeal, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Background

The Plaintiff, O.N. Equity Sales Company (ONESCO), commenced this action against Mark R. Rahner and Leslie L. Rahner, individually and in their role as trustees of two trusts (collectively, "the Rahners"). The sole relief sought in the Complaint is a determination that ONESCO is not required to participate in an arbitration proceeding in which the Rahners are claimants. ONESCO contends that the Rahners cannot compel arbitration under the NASD Code of Arbitration, Rule 10301. The Rahners now move to compel arbitration of their claims against ONESCO.

ONESCO filed a motion for leave to conduct discovery on the "issue of arbitrability," which was referred to the Magistrate Judge for a determination. ONESCO contended that it should be allowed to conduct discovery to determine certain facts pertaining to the Rahners' claims. The Rahners opposed the motion, contending that all pertinent documents demonstrate that they are entitled to compel arbitration of their claims.

The Magistrate Judge denied the motion for discovery. He determined that no discovery was needed in order to determine whether the Rahners can compel arbitration. ONESCO has appealed from that ruling.

## III. Issues Presented

The first issue presented is whether ONESCO should be allowed to conduct discovery before this Court rules on the Defendants' Motion to Compel Arbitration. If no discovery is necessary, then the second issue presented is whether the Rahners can compel arbitration of their claims.[2]

The Court addresses both issues simultaneously. Whether discovery is necessary is inextricably dependent upon the analytical framework which governs whether the Rahners can compel arbitration. This is because it is the analytical framework which defines what facts are material. If there is a dispute as to a material fact, then discovery should be permitted. Conversely, if the dispute is as to an immaterial fact, then no discovery is required.

## IV. Analysis

The Federal Arbitration Act applies when there is a written contract to arbitrate involving commerce. *See Cummings v. FedEx Ground Package System, Inc.,* 404 F.3d 1258 (10th Cir.2005). The Tenth Circuit has repeatedly stated that "[t]he FAA manifests a liberal federal policy favoring arbitration." *See, e.g., 1mage Soft-*

---

**2.** In addressing these issues, the Court is cognizant that several district courts around the country have already addressed them in other cases commenced by ONESCO. All such courts denied ONESCO's requests for discovery and/or determined that arbitration was required. *See ONESCO v. Wallace,* 2007 WL 4106476 (S.D.Cal., Nov. 15, 2007); *ONESCO v. Prins,* 519 F.Supp.2d 1006 (D.Minn.2007); *ONESCO v. Cui,* 2007 WL 3071553 (N.D.Cal., Oct. 19, 2007); *ONESCO v. Gibson,* 514 F.Supp.2d 857 (S.D.W.Va.2007); *ONESCO v. Robinson,* 2007 WL 2840477 (E.D.Va., Sep. 27, 2007); *ONESCO v. Venrick,* 508 F.Supp.2d 872 (W.D.Wash.2007); *ONESCO v. Pals,* 509 F.Supp.2d 761 (N.D.Iowa 2007); *ONESCO v. Steinke,* 504 F.Supp.2d 913 (C.D.Cal.2007). Notwithstanding the existence of such persuasive authority, this Court independently analyzes these issues, but reaches precisely the same conclusions.

*ware, Inc. v. Reynolds and Reynolds Co.,* 459 F.3d 1044, 1055 (10th Cir.2006) (internal quotes and cite omitted). An agreement to submit claims to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

■■■ If there is an agreement to submit claims to arbitration, then a court turns to its interpretation. If there are ambiguities as to the scope of an arbitration clause, they should be resolved in favor of arbitration. *See Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *see also 1mage Software, Inc.,* 459 F.3d at 1055 (the parties' intentions are controlling but generously construed with regard to the scope of issues which must be arbitrated).[3]

Rule 10301 in the NASD Code of Arbitration acts as a written arbitration contract for purposes of the FAA. ONESCO, as an NASD member, is a party to such contract.[4] *See MONY Securities Corp. v. Bornstein,* 390 F.3d 1340, 1342 (11th Cir.

2004) (citing *Washington Square Sec. Inc.,* 385 F.3d at 435).

Rule 10301 provides that: "Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or an associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated, under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer." A related rule—Rule 10101—describes matters which are eligible for arbitration and provides that the NASD Code of Arbitration "is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD] .... : (c) between or among members or associated persons and public customers, or others[.]"

■■■ Although there does not appear to be Tenth Circuit authority addressing the application of Rule 10301, the other circuit courts that have addressed its application uniformly apply a two-part test to deter-

---

**3.** Unless the parties clearly agree otherwise, it is for the Court to determine whether there is an arbitration agreement and whether a dispute falls within the scope of such agreement. *See Bridgestone/Firestone, Inc. v. Local Union No. 998,* 4 F.3d 918, 921 (10th Cir.1993). Here, the parties agree that this Court should determine whether the Rahners are entitled to demand arbitration and whether their claims fall within the scope of Rule 10301.

**4.** ONESCO has argued that there is a factual dispute as to the existence of a contract. However, ONESCO is an NASD member and thus a party to the "contract" created by Rule 10301. Whether a particular person is a "customer" entitled to enforce such contract does not pertain to the contract's existence, but rather to its scope. *See John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58–59 (2d Cir.2001); *Washington Square Securities, Inc. v. Aune,* 385 F.3d 432, 435 (4th Cir.2004);

*Multi–Financial Securities Corp. v. King,* 386 F.3d 1364, 1367 (11th Cir.2004). Indeed, were this Court to look at state law governing the formation and interpretation of contracts, Colorado courts repeatedly conclude that whether a non-party to an arbitration agreement can compel arbitration presents a question of an agreement's scope, not its existence. *See Allen v. Pacheco,* 71 P.3d 375, 379–80 (Colo.2003); *Eychner v. Van Vleet,* 870 P.2d 486, 489 (Colo.App.1993); *Everett v. Dickinson & Co., Inc.,* 929 P.2d 10 (Colo.App. 1996); *Eagle Ridge Condominium Ass'n v. Metropolitan Builders, Inc.,* 98 P.3d 915, 917 (Colo.App.2004). Regardless, whether a dispute pertains to a contract's existence or scope bears only upon whether a court should apply a presumption in favor of arbitration. The Court applies no such presumption in this case, because it is not necessary to do so in light of the material undisputed facts, described *infra.*

mine whether arbitration of a dispute is required.[5] To be subject to arbitration under Rule 10301, the dispute must (1) be between a customer and either an NASD member or "associated person" of an NASD member, and (2) arise in connection with the NASD member's business, or in connection with the activities of an associated person. The parties to this case both agree that this framework applies, but they disagree as to whether either element is satisfied.

### Material Undisputed Facts

The material facts are not in dispute.[6]

ONESCO is an NASD Member. Gary Lancaster was a registered representative with ONESCO from March 23, 2004 until January 3, 2005.

Mr. Lancaster was the trustee of the Lancorp Financial Fund Business Trust ("the Lancorp Trust"). The Rahners signed subscription agreements for a private placement offered by the Lancorp Trust in December 2003, pursuant to which they agreed to purchase shares in the Lancorp Trust. At that time, they tendered checks totaling $230,000 to the Lancorp Trust to be held in escrow until used to purchase shares in the Lancorp Trust. Each of these subscription agree-

ments identifies Bob Reese as the person who referred the Rahners to the Lancorp Trust. In February 2004, Mr. Lancaster accepted the Rahners' subscriptions by signing the subscription agreements.

Acting on behalf of the Mark R. Rahner and Leslie L. Rahner Trust, Mr. Rahner signed a new subscription agreement on April 30, 2004, and tendered another check in the amount of $25,000 to be held in escrow by the Lancorp Trust under the same conditions as the prior checks.[7] As previously, Bob Reese was listed as the person who referred the Rahners to the Lancorp Trust. In April 2004, Mr. Lancaster accepted this subscription.

The Lancorp Trust retained the authority to cancel all subscription agreements. Its private placement memorandum states: "this offering is made subject to withdrawal, cancellation, or modification by the trust without notice."

Between May 4 and November 10, 2004, Mr. Lancaster completed six sales of Lancorp Trust securities to Mark and/or Leslie Rahner in an amount totaling $385,000.

Several claimants, including the Rahners, now pursue claims against ONESCO in NASD Arbitration Case No. 07–00965. They claim that ONESCO failed to super-

---

**5.** *See MONY Securities Corp.*, 390 F.3d at 1343; *Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir.2002); *John Hancock Life Ins. Co.*, 254 F.3d at 58; *Washington Square Sec. Inc.*, 385 F.3d at 436; *California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316 (5th Cir.2004); *Multi–Financial Securities Corp.*, 386 F.3d at 1367.

**6.** The parties have not submitted any stipulated facts to aid in this Court's determination. However, where the pleadings demonstrate that the parties have agreed to a particular fact, the Court has treated that fact as undisputed. Because ONESCO has objected to the evidence submitted by the Rahners, the Court has not considered the Rahners' evidence and instead has looked

solely to the evidence submitted by ONESCO, as well as at the parties' arguments, to determine whether a fact is disputed.

**7.** The Rahners have submitted an affidavit from Mr. Lancaster, who states that in April 2004, he notified Lancorp Trust's investors that a material condition of their investment had changed, and he gave the investors an opportunity to either back out of the investment or to sign new subscription agreements. While this fact does not appear to be disputed, ONESCO objects to the Court's consideration of this affidavit and contends that Mr. Lancaster is not credible. This statement by Mr. Lancaster is not essential to the Court's determination, therefore the Court disregards it.

vise Mr. Lancaster, because it did not inspect his office, failed to review his correspondence and sales literature, failed to verify that he was not selling unapproved securities, did not investigate him after it was alerted by the Pennsylvania Securities Commission that it was investigating Mr. Lancaster's business, did not investigate his lack of production of commission revenue for ONESCO, allowed him to "park" his securities license, and reported inaccurate information about Mr. Lancaster in a Form U–5 submitted to the NASD. They seek to hold ONESCO liable for Mr. Lancaster's conduct, including alleged misrepresentations and omissions about the Lancorp Trust, and allege the violation of several federal and state securities laws and state common law.

### *"Between a customer and an associated person"*

The first part of the two-part test requires that the Rahners be "customers," either of ONESCO or of an "associated person" of ONESCO. Here, the Rahners contend that they were customers of an "associated person," Gary Lancaster, and that the sales of the Lancorp Trust securities occurred while Mr. Lancaster worked for ONESCO.

ONESCO argues that the Rahners were not customers of an associated person for several reasons. First, ONESCO contends that Mr. Lancaster was not associated with ONESCO at the time when he allegedly made any false representations or omissions to the Rahners, nor was he associated with ONESCO when the Rahners signed the original subscription agreements which provided for an irrevocable obligation to invest in the Lancorp Trust. Second, ONESCO contends that there is a factual dispute as to what misrepresentations and omissions were made, when they were made, and whether they were made by Mr. Lancaster or a man named Robert Reese, who was never asso-

ciated with ONESCO. Third, ONESCO asserts that there is a factual dispute as to whether it was Mr. Lancaster or Mr. Reese who induced the Rahners to sign the subscription agreements. As to these identified "factual disputes," ONESCO seeks to conduct discovery before the Court rules on the Rahners' Motion to Compel Arbitration.

Who, specifically, is a "customer" within the meaning of NASD Rules 10101 and 10301 is unaddressed in the Tenth Circuit. Unfortunately, the answer to this question is not clear in either the NASD rules or the caselaw of other circuits. The term "customer" is not defined in Rules 10101 or 10301. It appears in NASD Rule 0120, which provides definitions applicable to all of the NASD rules "unless the context otherwise requires." However, Rule 0120(g) defines "customer" only in the negative stating: "The term 'customer' shall not include a broker or dealer." Thus, arguably, a customer can be anyone other than a broker or dealer.

Courts generally have construed the term "customer" broadly, but not so broadly as to include anyone other than a broker or dealer. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir.2001); *BMA Financial Services, Inc. v. Guin*, 164 F.Supp.2d 813, 818–19 (W.D.La.2001). Several courts recognize that the definition of "customer" must not be so broad that it would upset the reasonable expectations of the NASD members, as parties to the "contract" created by the NASD rules. *See BMA Financial Services, Inc.*, 164 F.Supp.2d at 819. Instead, they look at the nature of the relationship between the investor and the NASD member or its associated person. *See id.* at 820.

In looking at these relationships, courts agree that an investor's status as a "customer" is determined by "the time of the

events providing the basis for the allegations." *See Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 820 (11th Cir.1993); *Ryan, Beck & Co., LLC v. Fakih,* 268 F.Supp.2d 210, 228 (E.D.N.Y.2003); *Gruntal & Co., Inc. v. Steinberg,* 854 F.Supp. 324, 340 (D.N.J.1994); *see also World Group Securities, Inc. v. Sanders,* No. 2:06–CV–00107 PGC, 2006 WL 1278738 (D.Utah May 8, 2006) (unpublished).[8]

The Eighth Circuit, relying upon various other NASD Rules, concluded that to be a "customer" for purposes of Rule 10301, an individual must be "involved in a business relationship with an NASD member that is related directly to investment or brokerage services." *See Fleet Boston Robertson Stephens, Inc.,* 264 F.3d at 772. It also concluded that a "customer" does not include a person who has merely received financial advice without any investment or brokerage related services. *Id.* at 773. In reaching these conclusions, the Eighth Circuit specifically relied upon NASD Rule 2270, which provides that a "customer" is "any person who, in the regular course of such member's business, has cash or securities in the possession of such member."[9] Although it did not state so expressly, the Eighth Circuit apparently determined that a broader definition of "customer" would impermissibly subject an NASD member to arbitration of claims that are too remote from the services which the NASD member provides. *See id.* at 772 ("We do not believe that the NASD Rules were meant to apply to every sort of financial service an NASD member might provide, regard-

less of how remote that service might be from the investing or brokerage activities, which the NASD oversees.").

In addition, to be a customer of an "associated person," the investor need not have any knowledge of the associated person's affiliation with the NASD member, nor need the associated person have been given authority by the NASD member to conduct the particular transaction. *See Vestax,* 280 F.3d at 1081–82; *BMA Financial Services, Inc.,* 164 F.Supp.2d at 820. While such facts might bear on the merits of the underlying claims, they do not pertain to the determination of whether an investor is a customer who can compel arbitration.

■ This Court agrees with the Eighth Circuit that to be a "customer" of an "associated person" under NASD Rule 10301, an individual must have received investment or brokerage services, not just financial advice, from the "associated person". Furthermore, the investment or brokerage services must have been provided during the time that the "associated person" is associated with an NASD member. Finally, the events that give rise to the claims, here negligent supervision premised upon fraud, must occur during the period of association and the provision of investment or brokerage services.

ONESCO argues that, when the underlying allegations pertain to fraud, "the time of the events providing the basis for the allegations" is when a claim of fraud would arise under a statute of repose,

**8.** Some of these cases involved questions of whether an NASD member who was a successor-in-interest could be required to defend claims in an arbitration proceeding, which is not the circumstance presented here. *See Wheat, First Securities Inc.,* 993 F.2d at 819–21; *Gruntal & Co., Inc.,* 854 F.Supp. at 339–41. Nevertheless, such cases are instructive as to how the investor's relationship with the NASD member or associate should be scruti-

nized, because they show what an NASD member's reasonable expectations are as to what claims should be submitted to arbitration.

**9.** Similarly, in the margin requirements context, a "customer" is, among other things, someone for whom, or to whom, "securities are purchased or sold." NASD Rule 2520(a)(3).

*i.e.,* when the misrepresentation or omission was made. The Court disagrees. An "event" which provides the basis for an allegation can certainly include a misrepresentation or omission, but it can also include a failure to correct a prior misrepresentation or omission, as well as a continued course of conduct which inflicts injury.

In this case, the Rahners submitted funds to the Lancorp Trust which were held in escrow pending a purchase of shares in the Lancorp Trust. While Mr. Lancaster was associated with ONESCO, he completed six sales of Lancorp Trust securities to the Rahners using funds that they had deposited into escrow. He also approved a new subscription agreement from Mr. Rahner on behalf of the Mark R. and Leslie L. Rahner Trust. The Rahners' transactions to purchase Lancorp Trust securities may have begun before Mr. Lancaster became associated with ONESCO, but the transactions were not completed until after he became associated with ONESCO. Thus, Mr. Lancaster provided investment services to the Rahners while he was an "associated person." Consequently, the Rahners were customers of an "associated person" of ONESCO.

The discovery ONESCO seeks would have no impact on this determination. This is because, for purposes of Rule 10301, it is irrelevant that the Rahners first entered into their subscription agreements before Mr. Lancaster became associated with ONESCO. Whether Mr. Lancaster or Mr. Reese made false representations to the Rahners, or when they made them, is also irrelevant under the Rule 10301 analysis. Such facts might be pertinent to the merits of the Rahners' claims against ONESCO, but at this juncture, the Court is only concerned with whether the Rahners received investment services from Mr. Lancaster while he was associated with ONESCO. Such receipt of services, alone, is sufficient to render the Rahners "customers" of an "associated person" for purposes of Rule 10301.

### *"Arising in connection with the NASD member's business"*

With regard to this requirement, the Rahners assert that their claims arose out of ONESCO's business, because they have alleged negligent supervision by ONESCO. ONESCO contends that the Rahners' claims did not arise in connection with ONESCO's business, because there is no nexus between their claims and ONESCO's business, and ONESCO played no role in the transactions. ONESCO focuses, in particular, upon the timing of the allegedly false representations or omissions which induced the Rahners to invest in the Lancorp Trust.

To be subject to arbitration under Rule 10301, a dispute must arise in connection with the NASD member's business. Every circuit that has addressed the issue has concluded that claims based upon an NASD member's supervision of an associated person "arise in connection with" the NASD member's business. *See MONY Securities Corp.,* 390 F.3d at 1344–45; *King,* 386 F.3d at 1370; *Vestax Securities Corp.,* 280 F.3d at 1082; *Washington Square Sec. Inc.,* 385 F.3d at 437. In the absence of authority to the contrary, this Court agrees.

The discovery ONESCO desires would not have any impact on such determination, either. Here, the Rahners claim that ONESCO was negligent in supervising Mr. Lancaster while he was an associated person. This is true even if the alleged false statements and omissions occurred before Mr. Lancaster's association with ONESCO, and even if such statements and omissions were made by Mr. Reese, because the alleged negligent supervision occurred during

Mr. Lancaster's association with ONES-CO. By alleging supervisory negligence, it is the Rahners' apparent contention that, if ONESCO had properly supervised Mr. Lancaster by inspecting his office and monitoring his correspondence, then the Rahners would not have been injured. Indeed, while Mr. Lancaster was associated with ONESCO, he completed six purchases of shares in the Lancorp Trust using the Rahners' money. Pursuant to the private placement memorandum, he could have instead chosen to cancel the subscription agreements and return the money to the Rahners. Arguably, ONESCO, as Mr. Lancaster's supervisor, could have influenced his decision. Thus, the Rahners' claims arise in connection with ONES-CO's business.

**IT IS THEREFORE ORDERED** that:

(1) The Magistrate Judge's Order (# 38) denying the Plaintiff's motion (# 10) to allow the parties to engage in discovery on the issue of arbitrability is **AFFIRMED**.

(2) The Plaintiff's motion (# 28) under Fed.R.Civ.P. 56(f) is **DENIED**.

(3) The Defendants' Motion to Compel Arbitration (# 12) is **GRANTED**. The claims asserted by the Defendants against the Plaintiff shall be determined in NASD Arbitration Case No. 07–00965.

(4) The Clerk of Court is directed to close this case.