Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ.

BANK OF THE COMMONWEALTH

v.  Record No. 101120    OPINION BY JUSTICE DONALD W. LEMONS
                                September 16, 2011
ROGER O. HUDSPETH

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Norman A. Thomas, Judge

In this appeal, we consider whether the Circuit Court of the City of Norfolk (the "circuit court") erred when it refused to stay the suit of Roger O. Hudspeth ("Hudspeth") against the Bank of the Commonwealth ("the Bank") and compel Hudspeth to submit his claim against the Bank to arbitration before the Financial Industry Regulatory Authority ("FINRA") because it found that the Bank was not a "customer" as defined by the FINRA Code of Arbitration Procedure for Customer Disputes ("Customer Code").

I. Facts and Proceedings Below

In November 2005, the Bank hired Hudspeth to serve as Vice President – Investments and as sales manager of its affiliated limited liability corporation, Commonwealth Financial Advisors, LLC ("CFA").  Hudspeth's employment with the Bank was subsequently terminated in February 2008.  Thereafter, Hudspeth filed a complaint against the Bank in October 2008, alleging that the Bank failed to pay compensation of $225,000 to which he was entitled for his employment.  The Bank filed a demurrer,

arguing that any agreement Hudspeth may have had was with CFA and not the Bank.  The circuit court overruled the demurrer in February 2009.

In March 2009, the Bank filed a motion to stay and to compel arbitration, arguing that it was entitled, as a member firm under FINRA's Customer Code,[1] which governs disputes between members, to compel arbitration of Hudspeth's claim. FINRA is the successor to the National Association of Securities Dealers ("NASD") and is responsible for regulating FINRA members and enforcing arbitration under the Customer Code.  See Karsner v. Lothian, 532 F.3d 876, 879 (D.C. Cir. 2008).

Under Customer Code Rule 12200, a dispute must be arbitrated if "[t]he dispute arises in connection with the business activities of [a] member or [an] associated person [of a member]," is between "a customer and a member or associated person of a member," and is "[r]equested by the customer."[2]  The Bank argued that, as a subsidiary of Commonwealth Bank Shares, Inc., the Bank was a "member" firm under the Customer Code, and Hudspeth, as a securities broker registered with FINRA, was an

---

[1] See Financial Industry Regulatory Authority, Code of Arbitration Procedure for Customer Disputes, FINRA Manual: Rule 12000 et seq., available at http://finra.complinet.com (last visited June 23, 2011) (hereinafter "Customer Code").

[2] The terms "associated person," "associated person of a member," "customer," "dispute," "member," and "person associated with a member" are defined in Rule 12100 of the Customer Code.

"associated person of a member" under the Customer Code. Therefore, the dispute was between a member and an associated person, and the Bank was entitled to compel arbitration under the Customer Code.

In July 2009, the Bank filed a supplemental motion to stay and to compel arbitration, asserting, in the alternative, that the circuit court should compel arbitration because the Bank is a "customer" under the Customer Code. In support of its motion, the Bank argued that the Customer Code defines "customer" broadly, excluding only a broker or dealer, which the Bank is not. Moreover, the Bank asserted that at the time of Hudspeth's employment, the Bank was a customer of BI Investments, L.L.C. ("BI Investments"), a broker-dealer of securities and a member of FINRA with which the Bank had entered into a brokerage agreement to provide investment products, through CFA, to the Bank's patrons. The Bank further asserted that because Hudspeth was registered as a securities broker with FINRA through BI Investments at all relevant times, Hudspeth was an associated person of a member, BI Investments. Therefore, because the dispute was between a customer (the Bank) and an associated person of a member (Hudspeth), arbitration was mandatory under the Customer Code.

In response, Hudspeth argued that there must be an express agreement between Hudspeth and the Bank to compel him to submit

3

to arbitration. Because there was no such agreement, Hudspeth argued, the circuit court must deny the Bank's motion to compel arbitration. Hudspeth also asserted that the Bank is neither a "member" firm nor a "customer" under the Customer Code.[3] According to Hudspeth, the Bank is not a "member" merely because it is a subsidiary of Commonwealth Bank Shares, Inc., and it is not a "customer" because the Bank does not "receive investment and brokerage services from a securities licensee."

The circuit court denied the Bank's motion to stay and compel arbitration, concluding that, although Hudspeth was an "associated person of a member" with respect to BI Investments, the Bank was not a "customer" of BI Investments and therefore was not entitled to compel arbitration.[4] The circuit court found that there was no evidence of an express arbitration agreement between the parties, but explained that this finding "d[id] not end the inquiry" because arbitration may be imposed in the absence of an express agreement if the Bank was a "customer" under the Customer Code. The circuit court observed

---

[3] Hudspeth does not dispute that he is an "associated person of a member" under the Customer Code. See Customer Code Rule 12100(a).

[4] The circuit court also held that the evidence did not support the existence of a Dual Employment Agreement that allegedly contained a mandatory arbitration clause, and it held that the Bank was not a "member" under the Customer Code by virtue of its subsidiary position to Commonwealth Bank Shares, Inc. The Bank did not assign error to these rulings. There has been no contention that the Bank is an "associated person."

that determining whether the Bank was a "customer" for purposes of the Customer Code does not end at the conclusion that the Bank is not a dealer or broker, as the Bank asserted. Rather, the circuit court stated it would adopt a more "holistic point of view," finding that the "definition [of customer] within the [Customer] Code is a contextual one, and it must be fleshed out in individual cases with regard to the factual assertions being made in the individual case and the position of the parties in the case." The circuit court determined that the Bank was not a member of the "investing public," and held that it was not a "customer" for purposes of the Customer Code because the brokerage agreement established between BI Investments and the Bank established independent roles for each entity. Therefore, the circuit court denied the Bank's motions to stay and to compel arbitration.

The Bank timely filed its notice of appeal[5] and we granted an appeal on the following assignment of error:

1. The [Circuit] court erred in refusing to stay the case and compel Plaintiff to submit his claim against Bank of the Commonwealth to arbitration before the Financial Industry Regulatory Authority ("FINRA") because Bank of the Commonwealth was a customer of BI Investments, LLC and entitled, pursuant to FINRA Customer Code Rule 12200, to demand arbitration of its dispute against Plaintiff, who is a member of FINRA and an associated person of a member of FINRA.

---

[5] Denial of a motion to compel arbitration is an appealable order under the provisions of Code § 8.01-581.016(1).

5

## II. Analysis

### A. Standard of Review

Well-settled principles of appellate review guide our analysis in this case.

> [A]n issue of statutory interpretation is a pure question of law which an appellate court reviews de novo. When the language of a statute is unambiguous, the appellate court is bound by the plain meaning of that language. . . . If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). Additionally, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (citations and internal quotation marks omitted).

### B. Customer Code Rules 12100 & 12200

The first duty of a court asked to compel arbitration of a dispute is to "determine whether the parties agreed to arbitrate that dispute," and when the arbitration agreement is within the coverage of the Federal Arbitration Act, as is conceded here, the court "is to make this determination by applying the 'federal substantive law of arbitrability.' "

6

<u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985). In this case, the circuit court found, and the parties have not appealed from the ruling, that the parties have not entered into "an actual [arbitration] agreement." However, the United States Court of Appeals for the Fourth Circuit has recognized that "[t]he obligation and entitlement to arbitrate does not attach only to one who has personally signed the written arbitration provision. Rather, well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." <u>Washington Square Sec., Inc. v. Aune</u>, 385 F.3d 432, 435 (4th Cir. 2004) (internal quotation marks and citations omitted).

Additionally, the United States Supreme Court has stated that, "in applying general state law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration] Act, due regard must be given to the federal policy favoring arbitration." <u>Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.</u>, 489 U.S. 468, 475-76 (1989) (citation omitted). Furthermore,

> there is a presumption of arbitrability in the
> sense that "[an] order to arbitrate the
> particular grievance should not be denied unless

7

> it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

Significantly, the United States Supreme Court has stated that, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, . . . the arbitration clause [is] quite broad. " Warrior & Gulf, 363 U.S. at 584-85. See Washington Square Sec., 385 F.3d at 436.

Rule 12200 of the Customer Code provides that parties must arbitrate a dispute if "[a]rbitration under the Code is either: (1) Required by a written agreement, or (2) Requested by the customer; [t]he dispute is between a customer and a member or associated person of a member; and [t]he dispute arises in connection with the business activities of the member or the associated person." Significantly, the Customer Code "constitutes an 'agreement in writing' under the Federal Arbitration Act," see Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship, 41 F.3d 861, 863-64 (2nd Cir. 1994), which binds Hudspeth to submit an eligible dispute to arbitration upon a

8

customer's demand because the circuit court held, and Hudspeth did not dispute, that Hudspeth is an associated person of a member, BI Investments.  Customer Code Rule 12200.  See also Customer Code Rule 12100(a) (defining "associated person of a member").

This arbitration agreement binds Hudspeth if the demand to arbitrate is made by a "customer."  The trial court held that the dispute arises in connection with a business activity of an associated person and this holding is not challenged on appeal.  The remaining issue is whether the Bank qualifies as a "customer" under the Customer Code.  Construction of the term "customer" under the Customer Code is a question of first impression before this Court.  The Customer Code does not provide a comprehensive definition of the term "customer," stating only that "[a] customer shall not include a broker or dealer."  Customer Code Rule 12100(i).  Notably, the Approval Order for the amendments made to the Customer Code effective after April 16, 2007, notes that "commenters suggested defining the term 'customer' to help clarify jurisdictional and standing issues related to arbitration."  Order Approving Proposed Rule Change and Amendments to NASD Arbitration Rules for Customer Disputes, 72 Fed. Reg. 4574, 4577 (Jan. 31, 2007).  However, the NASD declined to follow such suggestions, and specifically noted that the Customer Code "would define a 'customer' as not

9

including a broker or a dealer. . . . the same [definition] as that [previously] found in the general definitions for NASD rules." Id.

FINRA has adopted two other rules that, while not contained in the Customer Code, define the term "customer." Specifically, FINRA Rule 2261(c) defines a "customer" as "any person who, in the regular course of such member's business, has cash or securities in the possession of such member,"[6] and FINRA Rule 4210(a)(3) defines a "customer" as

> any person for whom securities are purchased or sold or to whom securities are purchased or sold . . . . It will also include any person for whom securities are held or carried and to or for whom a member extends, arranges or maintains any credit. The term will not include . . . a broker or dealer from whom a security has been purchased or to whom a security has been sold for the account of the member or its customers.[7]

However, these definitions are inapplicable in this case because they are expressly limited in application to these particular FINRA Rules. See FINRA Rule 2261(c); FINRA Rule 4210(a).

The vast majority of cases dealing with the question of whether a particular party qualifies as a "customer" under the Customer Code involve aggrieved investors who had been provided

---

[6] See FINRA Manual: Rule 2261, available at http://finra.complinet.com (last visited June 23, 2011).
[7] See FINRA Manual: Rule 4210, available at http://finra.complinet.com (last visited June 23, 2011).

investment services by a member or the associated person of a member.[8]  Arguing along these lines, Hudspeth relies upon the United States Court of Appeals for the Eighth Circuit's decision in Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., 264 F.3d 770, 772 (8th Cir. 2001), for the propositions that: (1) the FINRA Rules support "a general definition of 'customer' as one who receives investment and brokerage services;" and (2) the Customer Code supports the proposition that the term "customer" "refers to one involved in a business

---

[8] See, e.g., Washington Square Sec., 385 F.3d at 436-37 (holding that investors who sustained losses due to allegedly fraudulent investments could initiate arbitration proceedings with the securities firm with which the broker was associated); Multi-Financial Sec. Corp. v. King, 386 F.3d 1364, 1367-70 (11th Cir. 2004) (holding that an investor who made an investment on the advice of a broker associated with an NASD-member securities firm was a "customer" of that firm); WMA Sec., Inc. v. Wynn, 32 Fed. Appx. 726, 728-29 (6th Cir. 2002) (holding that investors who purchased a particular company's securities based on the recommendation of a brokerage firm's registered representative qualified as "customers" of the firm because the broker was an "associated person" who advised and made the sales for the firm); John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58-59 (2d Cir. 2001) (holding that investors who were clients of a broker who qualified as an "associated person" but did not have accounts or investments with the broker's firm itself could compel arbitration against the firm notwithstanding the lack of a direct transactional relationship); Miller v. Flume, 139 F.3d 1130, 1135-37 (7th Cir. 1998) (holding that investors of a firm were "customers," for purposes of compelling arbitration, of the brokers who were principals in the firm and took its assets after the firm was dissolved); Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 357-58 (2d Cir. 1995) (holding that investors who had been defrauded by a representative of an NASD firm were customers of that firm under the NASD Code, despite the fact that they never opened formal accounts with the firm).

11

relationship with [a FINRA] member that is related directly to investment or brokerage services."  However, while "[i]t is well established that an investor is a customer of a financial firm that acts as its broker," J.P. Morgan Sec. Inc. v. Louisiana Citizens Prop. Ins. Corp., 712 F. Supp. 2d 70, 78 (S.D.N.Y. 2010), nothing in the Customer Code compels the conclusion that "the broker/investor relationship is the only relationship sufficient to satisfy Rule 12200.  The rule that an investor is a customer of its broker is a rule of inclusion, not exclusion."  Id.  See also Customer Code Rule 12100(i) (defining "customer").

Other jurisdictions have interpreted the negative definition in the Customer Code to mean simply that, because nothing in the Customer Code requires more, an entity is a customer if it is not a broker or dealer.  See, e.g., Multi-Fin. Sec. Corp. v. King, 386 F.3d 1364, 1368 (11th Cir. 2004) ("[The defendant] is a customer as long as she is not a broker or dealer . . . .  Enforcing the limitation [the plaintiff] seeks would be tantamount to reading language into the [Customer] Code that is conspicuously absent"); California Fina Group, Inc. v. Herrin, 379 F.3d 311, 317 (5th Cir. 2004) (noting that "the [Customer] Code defines 'customer' broadly, excluding only 'a broker or dealer'"); O.N. Equity Sales Co. v. Emmertz, 526 F. Supp. 2d 523, 529-30 (E.D. Pa. 2007) (holding

12

that the defendant was a customer "because he was not a broker or dealer"); First Montauk Sec. Corp. v. Four Mile Ranch Dev. Co., 65 F. Supp. 2d 1371, 1381 (S.D. Fla. 1999) (stating that "[the Customer Code] contain[s] no limitations other than exclusion of brokers and dealers from invoking rules relating to customers").

Turning to the language of the Customer Code, we conclude that Rule 12100(i), in defining the term "customer" by stating only that "[a] customer shall not include a broker or dealer," is ambiguous and susceptible to a meaning which covers the parties and dispute in this case. The Customer Code certainly supports the conclusion that "one who receives investment and brokerage services" is properly considered a "customer" who may demand arbitration under the Customer Code. Fleet Boston, 264 F.3d at 772. See also Customer Code Rules 12100(i) and 12200. However, because it is also susceptible to an interpretation under which the Bank may be considered a "customer" merely because it is not "a broker or dealer," we must construe this clause in favor of arbitration.

The United States Supreme Court has stated that the Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language

13

itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Relying on this direction, we have previously stated that "[t]his strong presumption of arbitrability mandates that a court must require the parties to submit to arbitration if the scope of an arbitration clause subject to the federal act is open to question." Amchem Products, Inc. v. Newport News Circuit Court Asbestos Cases Plaintiffs, 264 Va. 89, 97, 563 S.E.2d 739, 743 (2002). While it may be unfortunate that a more comprehensive and precise definition of "customer" has not been provided by the Customer Code, nevertheless, we agree with the Fourth Circuit's straightforward application of governing United States Supreme Court precedent such as Volt, 489 U.S. at 476, that "any ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." Washington Square Sec., 385 F.3d at 436 (internal quotation marks omitted).

### III. Conclusion

We hold that the circuit court erred when it denied the Bank's motion to stay and compel arbitration in this case. Only "the most forceful evidence" showing the intent by FINRA "to exclude the claim from arbitration" can overcome the presumption of arbitrability. Id. at 438 (quoting and applying Warrior & Gulf, 363 U.S. at 584-85). No such showing has been

14

made in this case.  Accordingly, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.