[No. D058531. Fourth Dist., Div. One. Mar. 23, 2012.]

JOHN D. THOMAS, Plaintiff and Respondent, v.
STEPHEN M. WESTLAKE et al., Defendants and Appellants.

### COUNSEL

Edgerton & Weaver, Chad E. Weaver and Elizabeth M. Del Cid for Defendants and Appellants.

Law Offices of Timothy C. Karen and Timothy C. Karen for Plaintiff and Respondent.

### OPINION

**IRION, J.**—An investment advisor and related defendants appeal the order denying their petition to compel an investor's successor in interest to arbitrate claims alleging the defendants mismanaged the investor's accounts. The trial court denied the petition on the grounds that the claims against two of the six defendants were not subject to arbitration because those defendants were not parties to any arbitration agreement, and that there was a possibility of

conflicting rulings on common questions of law or fact if arbitration of the claims against the other four defendants were ordered. We reverse.

I

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Arbitration Agreements*

Before her death, Katherine W. Thomas, an elderly widow, opened three investment accounts with defendants Ameriprise Financial Services, Inc. (AFSI),[1] a subsidiary of Ameriprise Financial, Inc. (AFI). Defendant Stephen M. Westlake (erroneously sued as Steven M. Westlake), a registered representative of AFSI, acted as the securities broker and investment advisor for these accounts.

Katherine opened the first investment account in her capacity as trustee of the John W. and Katherine W. Thomas Family Trust (the Family Trust). A form Katherine signed when she opened this account acknowledged she had received and read the "Brokerage Client Agreement" and agreed to abide by its terms and conditions. The Brokerage Client Agreement contains the following arbitration clause: "Any controversy arising out of, or relating to, my accounts, to transactions with you or your Broker and/or employees for me or to this agreement or the breach thereof, shall be settled by arbitration and conducted pursuant to the Federal Arbitration Act, before the American Arbitration Association or the National Association of Securities Dealers Inc., Chicago Stock Exchange Inc., the New York Stock Exchange, the American Stock Exchange to the extent you may be a member of such exchange or the Municipal Securities Rulemaking Board or the independent nonindustry arbitration forum as I may elect." Katherine later signed a "Client Service Agreement" for this account. The Client Service Agreement contains an arbitration clause nearly identical to the one in the Brokerage Client Agreement quoted above; the only differences are that the arbitration clause of the Client Service Agreement substitutes "Client's Service Account" for "my accounts" and "Sponsor or Sponsor's agents" for "you or your Broker."

Katherine opened the second investment account in her individual capacity. Katherine again signed a Client Service Agreement, which contained an arbitration clause identical to the one contained in the Client Service Agreement pertaining to the first account.

Katherine opened the third investment account in her capacity as trustee of the Family Trust. As part of the transaction, Katherine signed a form

---

[1] When Katherine opened the accounts, AFSI was known as American Express Financial Advisors, Inc.

acknowledging she had received and read the Brokerage Client Agreement and agreed to abide by its terms and conditions. The Brokerage Client Agreement for this third investment account contained the following arbitration clause: "You agree that all controversies that may arise between us (including, but not limited to the brokerage account and any service or advice provided by a broker or representative), whether arising before, on or after the date this account is opened shall be determined by arbitration in accordance with the rules then prevailing of either the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc., as you designate." (Some capitalization omitted.)

## B. *The Complaint*

After Katherine died, her son, plaintiff John D. Thomas, succeeded Katherine as trustee of the Family Trust; became her successor in interest (Code Civ. Proc., § 377.11); and filed this action. Initially, John sued only Westlake; Westlake's firm, Westlake, Grahl and Glover (WGG); and AFSI. He later amended the complaint to add as defendants AFI; and two insurance companies, IDS Life Insurance Company (IDS) and RiverSource Life Insurance Company (RiverSource),[2] which allegedly sold Katherine certain insurance policies and annuities. The operative complaint asserts claims based on breach of fiduciary duty, negligence, fraud, money had and received, violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) and elder abuse (Welf. & Inst. Code, § 15600 et seq.). The gist of the complaint is that defendants conspired to "churn" Katherine's investment accounts by inducing her to make unsuitable investments that increased defendants' commissions and profits and substantially reduced the value of the accounts.

## C. *The Petition to Compel Arbitration*

In response to the original complaint, Westlake, WGG and AFSI requested that John submit his claims to arbitration pursuant to the arbitration clauses in the account agreements Katherine signed, but John refused. Westlake, WGG and AFSI therefore petitioned the trial court to compel arbitration and also moved the court to stay proceedings until arbitration was completed. (See Code Civ. Proc., §§ 1281.2, 1281.4.) After John amended the complaint to add AFI, IDS and RiverSource as defendants, all defendants filed an amended petition to compel arbitration and again moved for a stay of proceedings. Defendants again sought an order "compelling [John] to submit all of his claims . . . to binding arbitration"; and, in accordance with the terms of the various arbitration clauses authorizing AFSI to select a forum when the

---

[2] According to the first amended complaint, IDS changed its name to RiverSource "and these companies are one and the same."

account holder does not do so, defendants specifically requested arbitration before the Financial Industry Regulatory Authority (FINRA).[3]

In support of the amended petition, defendants submitted a declaration from Westlake which attached copies of the arbitration provisions described in part IA., *ante*. Defendants also submitted a declaration from their attorney which attached correspondence showing their attorney had asked John's attorney to stipulate to arbitration, but he refused.

John opposed the amended petition primarily on the grounds that (1) his claims against WGG, AFI, IDS and RiverSource are not subject to arbitration because these defendants are not signatories to any arbitration agreement, and may not arbitrate before FINRA because they are not members of FINRA or associated persons of members, and (2) if arbitration of his claims against Westlake and AFSI were ordered, there would be a possibility of conflicting rulings on common questions of law and fact. (See Code Civ. Proc., § 1281.2, subd. (c).) John also argued he did not have to arbitrate because this case is a "technical insurance dispute," and as such is expressly excepted from arbitration by FINRA's rules.

In reply to John's opposition to the amended petition to compel arbitration, defendants submitted various printouts from FINRA's Web site, which purported to show that: Westlake is a broker registered with AFSI; AFSI and IDS are members of FINRA; and "a sister company" of RiverSource is regulated by FINRA. Defendants also argued that they were all subject to and entitled to enforce the arbitration clauses, regardless of their membership in FINRA.

The trial court denied the amended petition to compel arbitration. In its minute order, the court noted that the contractual right to compel arbitration "may have to yield if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of conflicting rulings thereon." (See Code Civ. Proc., § 1281.2, subd. (c).) Because IDS and RiverSource were not parties to any of the arbitration agreements and there was no evidence they were third party beneficiaries entitled to enforce the agreements, the trial court concluded, "The difficulty of splitting up the claims coupled with the potential for inconsistent rulings mandates denial of this motion in total." The court did not specifically address the parties' arguments concerning each defendant's status as a member of FINRA or as an associated person of a member.

---

[3] FINRA is "the self-regulatory organization for securities broker-dealers and successor to the National Association of Securities Dealers (NASD)." (*Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 608 [94 Cal.Rptr.3d 526].)

## II

## DISCUSSION

Defendants contend the trial court erred in denying the amended petition to compel arbitration. They rely on theories of agency,[4] third party beneficiary status, and equitable estoppel to argue that all defendants are entitled to enforce the arbitration provisions of the agreements Katherine signed, even though some defendants are not parties to any of those agreements, and they contend all of John's claims, including those involving the purchase of insurance policies from IDS and RiverSource, are within the scope of the arbitration provisions. John, of course, contends the trial court properly refused to order arbitration because some defendants have no contractual right to arbitration, and, if arbitration of the claims against the defendants with arbitration rights were ordered, there would be a possibility of conflicting rulings on common factual or legal issues. John alternatively contends this case is a "technical insurance dispute" that falls outside the scope of arbitrations conducted by FINRA. As we shall explain, defendants are entitled to an order compelling John to arbitrate all of his claims.

A. *The Trial Court Erred by Relying on Code of Civil Procedure Section 1281.2, Subdivision (c) to Deny the Amended Petition to Compel Arbitration Because All Defendants Are Entitled to Enforce the Arbitration Clauses as Parties to the Agreements Containing the Clauses or as Agents of Such Parties*

■ The primary issue on appeal is whether the trial court properly refused to compel arbitration on the ground that "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Code Civ. Proc., § 1281.2, subd. (c).) As used in section 1281.2, subdivision (c), the term "third party" means a party to the action that is not bound by or entitled to enforce the arbitration agreement. (See *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1407 [117 Cal.Rptr.3d 310]; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1290 [63 Cal.Rptr.3d 787] (*Rowe*).) Thus, to decide this appeal we must determine which defendants are entitled to enforce the arbitration provisions contained in the various agreements Katherine signed.

---

[4] Because the agency issue appeared dispositive to us but was mentioned only in passing in defendants' briefs, we requested and have considered supplemental briefs from the parties on the issue. (See Gov. Code, § 68081.)

### 1. *The Proper Standard of Review Is De Novo*

As a threshold matter, the parties dispute the applicable standard of review. Defendants urge us to apply a de novo standard. John contends we must apply the substantial evidence standard to the trial court's finding on whether an enforceable arbitration agreement exists and the abuse of discretion standard to the court's decision not to order arbitration in reliance on Code of Civil Procedure section 1281.2, subdivision (c). We agree with defendants. To determine which defendants may enforce the arbitration clauses of the agreements Katherine signed, we need only examine those agreements and John's complaint. Because the contents of these documents are not in dispute, whether defendants have a right to compel arbitration presents a question of law for us to decide de novo. (E.g., *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708 [111 Cal.Rptr.3d 876]; *Lee v. Southern California University for Professional Studies* (2007) 148 Cal.App.4th 782, 785 [56 Cal.Rptr.3d 134].)

### 2. *All Defendants Are Entitled to Enforce the Arbitration Agreements as Parties Thereto or as Alleged Agents of Such Parties*

■ Turning to the merits, we begin by noting the general rule that only a party to an arbitration agreement is bound by[5] or may enforce the agreement. (Code Civ. Proc., § 1281.2;[6] *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 17 [125 Cal.Rptr.3d 522]; *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763 [28 Cal.Rptr.3d 752] (*Westra*).) Here, the only defendant that is a party to the agreements

---

[5] John, who is acting as Katherine's successor in interest and as successor trustee of the Family Trust, is bound by the arbitration provisions of the agreements Katherine signed. A decedent's successor in interest steps into the decedent's position as to a particular action. (*Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 905 [72 Cal.Rptr.3d 409].) "Thus, where [a decedent's successor in interest] asserts a claim on behalf of the estate, he or she must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent." (*SouthTrust Bank v. Ford* (Ala. 2002) 835 So.2d 990, 994.) Similarly, "a new trustee 'succeed[s]' to *all* the rights, duties, and responsibilities of his predecessors.'" (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1131 [69 Cal.Rptr.2d 317, 947 P.2d 279].) Thus, a successor trustee is bound by a valid arbitration agreement executed by a predecessor. (See *Hays and Co. v. Merrill Lynch* (3d Cir. 1989) 885 F.2d 1149, 1153 [holding bankruptcy trustee bound by arbitration clause in customer agreement signed by debtor].) Indeed, John has never contended the various arbitration clauses do not bind him.

[6] Code of Civil Procedure section 1281.2 provides: "On petition *of a party to an arbitration agreement* alleging the existence of a written agreement to arbitrate a controversy and that *a party thereto* refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines" that a specified exception applies. (Italics added.) The statute thus presumes the party seeking arbitration and the party refusing to arbitrate are both parties to the arbitration agreement.

containing arbitration clauses is AFSI. Hence, under the general rule, only AFSI could enforce the arbitration provisions against John.

There are, however, "exceptions to the general rule that a nonsignatory . . . cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement." (*Westra, supra,* 129 Cal.App.4th at p. 765.) One such exception provides that when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement, the defendant may enforce the agreement even though the defendant is not a party thereto. (E.g., *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826] (*Dryer*); *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1520 [81 Cal.Rptr.3d 892] (*RN Solution*); *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1210 [78 Cal.Rptr.2d 533] (*24 Hour Fitness*).)[7] Here, the operative complaint alleged: "At all times relevant herein, Defendants, and each of them, acted as an agent of each other Defendant in connection with the acts and omissions alleged herein." It also alleged that in soliciting Katherine to act or refrain from acting and providing her with information, "Defendants were acting as the actual or ostensible agents of the other Defendants." The operative complaint further alleged that Westlake, in all of his dealings with Katherine, "acted on behalf of, and as the authorized agent of," all of the other defendants. Accordingly, as alleged agents of parties to the agreements containing arbitration clauses, AFI, Westlake, WGG, IDS and RiverSource are also entitled to compel arbitration of John's claims against them.

■ John contended at oral argument, however, that the allegations of agency he made in the operative complaint cannot be used to require him to arbitrate his claims against the defendants which are not parties to any of the agreements Katherine executed. According to John, agency is only a theory of tort liability by which he may hold those defendants responsible for the wrongdoing that allegedly arose out of the relationship created by those agreements. We disagree. Having alleged all defendants acted as agents of one another, John is bound by the legal consequences of his allegations. (See *Westra, supra,* 129 Cal.App.4th at p. 766 [plaintiffs' allegations that nonsignatory to arbitration agreement acted as agent of signatory parties constituted binding judicial admissions].) And, as the cases cited above hold, a plaintiff's allegations of an agency relationship among defendants is sufficient to allow the alleged agents to invoke the benefit of an arbitration agreement executed

---

[7] Some of the arbitration clauses introduced by defendants require arbitration be "conducted pursuant to the Federal Arbitration Act." This does not require us to apply federal law in determining defendants' right to compel arbitration, however. Even when the Federal Arbitration Act (9 U.S.C. § 1 et seq.) applies, state law governs such matters as who is bound by and who may enforce an arbitration agreement. (*Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 631 [173 L.Ed.2d 832, 839–840, 129 S.Ct. 1896, 1902]; *Bank of America v. UMB Financial Services, Inc.* (8th Cir. 2010) 618 F.3d 906, 912.)

by their principal even though the agents are not parties to the agreement. (*Dryer, supra,* 40 Cal.3d at p. 418; *RN Solution, supra,* 165 Cal.App.4th at p. 1520; *24 Hour Fitness, supra,* 66 Cal.App.4th at p. 1210.) Moreover, it would be unfair to defendants to allow John to invoke agency principles when it is to his advantage to do so, but to disavow those same principles when it is not. (See Civ. Code, § 3521 ["He who takes the benefit must bear the burden."]; *Avina v. Cigna Healthplans of California* (1989) 211 Cal.App.3d 1, 3 [259 Cal.Rptr. 105] ["To allow respondent to assert rights and benefits under the contract and then later repudiate it merely to avoid arbitration would be entirely inequitable."].) We therefore reject John's attempt to limit the legal effect of his agency allegations to the imposition of tort liability on defendants.

### 3. *All Defendants May Arbitrate Before FINRA*

■ John also contended in his supplemental letter brief that the cases holding an agent may enforce an arbitration agreement of its principal "do not address the issue of FINRA rules and for that reason, they are not controlling." According to John, even if the agency allegations would otherwise entitle defendants to compel arbitration, here arbitration cannot be ordered because defendants specifically requested arbitration before FINRA, but not all defendants are members of FINRA or associated persons of such members entitled to proceed in that forum. In support of this contention, John cites rules Nos. 12200, 12201 and 12202 of FINRA's Code of Arbitration Procedure for Customer Disputes (FINRA rules Nos. 12200, 12201, 12202).[8]

---

[8] FINRA rule No. 12200 (Arbitration Under an Arbitration Agreement or the Rules of FINRA) provides: "Parties must arbitrate a dispute under the Code if: [¶] [(a)] Arbitration under the Code is either: [¶] (1) Required by a written agreement, or [¶] (2) Requested by the customer; [¶] [(b)] The dispute is between a customer and a member or associated person of a member; and [¶] [(c)] The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company."

FINRA rule No. 12201 (Elective Arbitration) provides: "Parties may arbitrate a dispute under the Code if: [¶] [(a)] The parties agree in writing to submit the dispute to arbitration under the Code after the dispute arises; and [¶] [(b)] The dispute is between a customer and a member, associated person of a member, or other related party; and [¶] [(c)] The dispute arises in connection with the business activities of a member or an associated person, except disputes involving the insurance business activities of a member that is also an insurance company."

FINRA rule No. 12202 (Claims Against Inactive Members) provides: "A claim by or against a member in one of the following categories is ineligible for arbitration under the Code unless the customer agrees in writing to arbitrate after the claim arises: [¶] [(a)] A member whose membership is terminated, suspended, cancelled or revoked; [¶] [(b)] A member that has been expelled from FINRA; or [¶] [(c)] A member that is otherwise defunct."

According to FINRA's "Glossary of Arbitration Terms," "associated person" means "any person engaged in the investment banking or securities business who is directly or indirectly controlled by a FINRA member, whether or not [the person is] registered or exempt from registration with FINRA."

He also relies on *Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1032 [23 Cal.Rptr.3d 524] (*Provencio*), which held: "When the parties to a contract agree to arbitrate any disputes before a particular forum, that provision becomes an integral part of their contract. *If that forum is not available to hear the dispute*, then a petition to compel arbitration may not be granted." (Italics added.) Such reliance is misplaced here, because as we shall explain, FINRA *is* an available arbitral forum.

■ The parties agreed in their written submissions that at least one defendant, AFSI, is a FINRA member. At oral argument, John conceded that AFI is also a FINRA member, and that Westlake and his firm, WGG, are "associated persons" within the meaning of FINRA's arbitration rules. (See fn. 8, *ante.*) There is also no dispute that Katherine (whom John represents in this action) was a "customer" within the meaning of FINRA rule No. 12200, because she had an account with AFSI. (See *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.* (2d Cir. 2011) 661 F.3d 164, 172–173 (*Wachovia Bank*) [for purposes of FINRA arbitration, a customer is a person or an entity (not acting as a member or an associated person) that transacts business with a member or an associated person].) Hence, John's claims against AFSI, AFI, Westlake and WGG may be arbitrated before FINRA under the plain terms of FINRA rule No. 12200. (See fn. 8, *ante.*) The only question, then, is whether John's claims against the two remaining defendants, IDS and RiverSource, also may be arbitrated before FINRA. As we shall explain, the answer is yes.

■ Here, the operative complaint alleged that each defendant was the agent of every other defendant. For purposes of FINRA rule No. 12200, courts hold that "[w]hen an investor deals with a member's agent or representative, the investor deals with the member." (*Multi-Financial Securities Corp. v. King* (11th Cir. 2004) 386 F.3d 1364, 1370 [decided under predecessor NASD (National Association of Securities Dealers) arbitration rules]; accord, *Vestax Securities Corp. v. McWood* (6th Cir. 2002) 280 F.3d 1078, 1082; *Financial Network Investment Corp. v. Becker* (N.Y.App.Div. 2003) 305 A.D.2d 187, 188 [762 N.Y.S.2d 25, 27].) Further, in this context an investor qualifies as a "customer." (See *J.P. Morgan Securities Inc. v. Louisiana Citizens Property Ins. Corp.* (S.D.N.Y. 2010) 712 F.Supp.2d 70, 78 ["It is well established that an investor is a customer of a financial firm that acts as its broker."]; *Bank of the Commonwealth v. Hudspeth* (2011) 282 Va. 216, 224, fn. 8 [714 S.E.2d 566, 571, fn. 8] [collecting cases holding investors who had received services from FINRA members or associated brokers were customers within meaning of FINRA rule No. 12200].) Thus, in dealing with IDS and RiverSource (AFSI's alleged agents), Katherine (a customer) was dealing with AFSI (a member) and in representing Katherine in this action, John is asserting claims on behalf of a customer against a FINRA member (either

directly or indirectly through an agent of a member). Such claims are arbitrable before FINRA under FINRA rule No. 12200.

We are not persuaded by John's argument that IDS and RiverSource, being neither members of FINRA nor associated persons of members, have no right to compel arbitration because John has "not entered into a **post-dispute** agreement to arbitrate the dispute with them before FINRA." In making this argument, John relies on inapplicable FINRA arbitration rules and a factually inapposite case applying a predecessor to one of those rules.

█ John first relies on FINRA rule No. 12201. That rule concerns *elective* arbitration and provides that a customer *may* arbitrate a dispute with a member, associated person or other related party before FINRA if, among other conditions, the parties agree in writing to submit the dispute to arbitration after the dispute arises. (See fn. 8, *ante*.) Thus, FINRA rule No. 12201 simply recognizes that under certain conditions, parties *without an existing arbitration agreement* are free to enter into an agreement to arbitrate a dispute before FINRA *after a dispute arises*. FINRA rule No. 12201 says nothing about the circumstances of this case, which involves the enforcement of *existing agreements requiring arbitration of a dispute that arose after execution of the agreements*. The situation presented by this case is governed by FINRA rule No. 12200, which concerns *mandatory* arbitration and does not require an additional postdispute agreement. (Fn. 8, *ante*; see Code Civ. Proc., § 1281 ["A written agreement to submit to arbitration an existing controversy *or a controversy thereafter arising* is valid, *enforceable* and irrevocable, save upon such grounds as exist for the revocation of any contract." (italics added)].)[9]

█ John next relies on FINRA rule No. 12202 and the predecessor NASD rule considered in *Provencio, supra*, 125 Cal.App.4th 1028. Under these rules, disputes between a customer and a member of the regulatory authority are ineligible for arbitration before the authority once the member loses its membership in the authority or becomes defunct, unless the customer

---

[9] At oral argument John briefly suggested that participants in an arbitration before FINRA must execute a "uniform submission agreement" before proceeding. He has not directed us to, and we have not found, any reference to such an agreement in the arbitration provisions of the contracts Katherine executed, in the few FINRA arbitration rules John submitted to the trial court or elsewhere in the record. Nor has John cited any authority in support of an argument that execution of a separate "uniform submission agreement" is required before parties with a predispute arbitration agreement may arbitrate before FINRA. Such an argument would be contrary to the rule that although "generally a submission agreement is a prerequisite to the commencement of a valid arbitration proceeding," where, as here, " 'the parties have executed an arbitration agreement, they undoubtedly may use it as a submission agreement as soon as the controversy arises.' " (*Drake v. Stein* (1953) 116 Cal.App.2d 779, 782 [254 P.2d 613], disapproved on other grounds by *Brink v. Allegro Builders, Inc.* (1962) 58 Cal.2d 577, 580 [25 Cal.Rptr. 556, 375 P.2d 436].)

agrees to such arbitration in writing after the dispute arises. (See *Provencio*, at pp. 1032, 1033, fn. 5; fn. 8, *ante*.) The *Provencio* court held that an entity that was no longer an NASD member could not compel a customer to arbitrate before NASD when the customer had not executed the postdispute written agreement required by the predecessor to FINRA rule No. 12202. (125 Cal.App.4th at p. 1033 & fn. 5.) This case, however, does not involve an inactive or defunct FINRA member. As John has conceded, AFSI "was, at all relevant times herein, a FINRA member"; and as we have held, John's allegations that all of the other defendants acted as agents of AFSI entitle them to invoke the benefit of the arbitration clauses of the agreements between Katherine and AFSI. Therefore, neither FINRA rule No. 12202 nor *Provencio* requires a postdispute arbitration agreement in this case.

■ Accordingly, we hold that all defendants are parties, or alleged agents of parties, to the various account agreements Katherine signed, and on that basis are entitled to enforce the arbitration clauses contained in those account agreements and to arbitrate before FINRA.[10] "Since all of the parties involved in the lawsuit are bound by the arbitration agreement, the fundamental condition for the application of [Code of Civil Procedure] section 1281.2[, subdivision (c)]—a pending court action or special proceeding between a party to the arbitration agreement and a third party—is absent." (*RN Solution, supra*, 165 Cal.App.4th at p. 1521.) "Section 1281.2, subdivision (c) therefore does not apply, and the trial court erred in denying arbitration on this ground." (*Rowe, supra*, 153 Cal.App.4th at p. 1290.)

## B. *All of the Claims Pleaded in the Operative Complaint Are Arbitrable*

John also argues we may affirm the order denying defendants' amended petition to compel arbitration on the ground this case is a dispute over a

---

[10] We note that even if FINRA were not available as an arbitral forum, such unavailability would not require denial of defendants' amended petition to compel arbitration. What defendants asked the trial court for was an order "compelling [John] to submit all of his claims . . . to binding arbitration." Although defendants did specifically request arbitration before FINRA, they had a right to select that forum after John refused to arbitrate and select an arbitral forum as required under the applicable arbitration clauses. FINRA, however, is not the only potentially available arbitral forum. The arbitration clauses specify alternative forums, including the American Arbitration Association, the New York Stock Exchange, the American Stock Exchange, and an independent nonindustry arbitration forum. Hence, if the parties were unable to arbitrate before FINRA, the trial court could order them to proceed before one of the other forums designated in the arbitration clauses and thereby grant the relief defendants ultimately requested. (See, e.g., *Reddam v. KPMG LLP* (9th Cir. 2006) 457 F.3d 1054, 1061 [arbitration agreement did not become "unenforceable between the parties when the NASD bowed out," because designation of NASD was not "central" to arbitration agreement]; *Brown v. ITT Consumer Financial Corp.* (11th Cir. 2000) 211 F.3d 1217, 1222 [where chosen forum is unavailable, substitute arbitrator generally may be named]; *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1986) 183 Cal.App.3d 1097, 1107 [228 Cal.Rptr. 345] [same].)

series of insurance transactions, and such disputes are expressly excluded from arbitration before FINRA. In making this argument, John again cites FINRA rule No. 12200, which requires arbitration if "[t]he dispute arises in connection with the business activities of the member or the associated person, *except disputes involving the insurance business activities of a member that is also an insurance company.*" (Italics added.) (See fn. 8, *ante*.) We may not affirm the trial court's order on the basis of this exception, however, because it does not cover John's dispute with defendants.[11]

Under FINRA rule No. 12200's exception for insurance disputes, "where the dispute is 'insurance-only' or even 'intrinsically insurance' it falls beyond the scope of arbitration." (*In re Prudential Ins. Co. of America Litigation* (3d Cir. 1998) 133 F.3d 225, 232.) "The purposes of the exclusion are to keep arbitrators away from issues that are peculiar to insurance, such as reserves, reinsurance, actuarial calculations, rates, coverage, and mandatory terms, and to prevent arbitrators from being swamped with insurance claims, which are apt to be more numerous than securities claims." (*IDS Life Ins. Co. v. Royal Alliance Associates* (7th Cir. 2001) 266 F.3d 645, 652 (*IDS Life Ins. Co.*).) John's claims do not involve any issues that are peculiar to insurance so as to trigger the exception.

To be sure, the investments of which John complains were replacement annuities and insurance policies purchased from IDS and RiverSource, both of which are insurance companies. But, "courts have determined that the exception may not be triggered simply because the dispute involves an insurance company." (*Wojcik v. Aetna Life Ins. & Annuity Co.* (N.D.Ill. 1995) 901 F.Supp. 1282, 1291.) "Rather, to successfully trigger the exception, a plaintiff must allege unlawful insurance practices and not simply wrongful conduct directed toward the plaintiff." (*Id.* at p. 1292.) Here, John has not alleged defendants engaged in unlawful insurance practices; his basic complaint is that defendants wrongfully induced Katherine to make investments that were unsuitable for a woman of her advanced age and modest income, and that they did so to generate sizable commissions and profits for themselves. Such claims of " 'churning' " do not fall within the exception to FINRA arbitration for insurance disputes, because an arbitrator would not "have to know anything about the insurance business in order to be able to arbitrate the plaintiffs' claims competently." (*IDS Life Ins. Co., supra*, 266 F.3d at p. 652.)

---

[11] The determination whether an arbitration provision covers a particular dispute presents a question of law, which we review de novo, where, as here, there is no factual dispute about the language of the provision. (E.g., *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670 [53 Cal.Rptr.2d 515].) The same standard of review applies to a determination whether FINRA's arbitration rules cover a particular dispute. (See *Wachovia Bank, supra*, 661 F.3d at pp. 171–172.)

In any event, as we have already explained, if FINRA were not available as a forum for resolution of John's claims against defendants, such unavailability would not require denial of the amended petition to compel arbitration, because the applicable arbitration clauses allow for arbitration in other forums. (See fn. 10, *ante.*) The arbitration clauses further require that all controversies "arising out of," "relating to," or "aris[ing] between" the parties and concerning Katherine's investment accounts be resolved by arbitration. Based on these broadly worded clauses, "[i]t seems clear to us that the parties intended [the] clause[s] to apply to disputes arising out of transactions based upon the client-broker relationship which the contract[s] established" (*Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1005 [119 Cal.Rptr. 130])—precisely the type of dispute asserted in the operative complaint. Thus, even if the nature of John's claims precluded arbitration before FINRA—and it does not—the claims would have to be arbitrated in another arbitral forum.

## C. *The Trial Court Must Order Arbitration and Also Stay Proceedings Pending Arbitration*

 For the reasons stated above, we hold the trial court erred in denying defendants' amended petition to compel arbitration. Because defendants established "the existence of a written agreement to arbitrate a controversy" and John's "refus[al] to arbitrate such controversy," the trial was required to order arbitration. (Code Civ. Proc., § 1281.2; see *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 687 [99 Cal.Rptr.2d 809] [court must order arbitration when petitioner meets requirements of Code Civ. Proc., § 1281.2 and no exception applies].)

 We also hold the trial court must grant defendants' related motion to stay the action. "If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action . . . pending before a court of this State, the court in which such action . . . is pending *shall,* upon motion of a party to such action . . . , *stay the action . . . until an arbitration is had in accordance with the order to arbitrate . . . .*" (Code Civ. Proc., § 1281.4, italics added.) This language requires a court to grant a party's motion to stay when the court has ordered arbitration of an issue in the action. (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1149, 1152 [70 Cal.Rptr.3d 645].) Thus, since the trial court must order arbitration of all of John's claims against defendants, it must also stay proceedings on the claims until completion of arbitration.

## DISPOSITION

The order denying defendants' petition to compel arbitration is reversed. The matter is remanded to the trial court with directions to enter a new and

different order granting the petition and staying all proceedings until completion of arbitration. Defendants are entitled to costs on appeal.

Haller, Acting P. J., and Aaron, J., concurred.