Filed 10/30/20  U.S. Security Associates, Inc. v. Andrews CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| U.S. SECURITY ASSOCIATES, INC., <br><br>     Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> RANDY ANDREWS, <br><br>     Defendant, Cross-complainant and Appellant. | B300675 <br><br> (Los Angeles County Super. Ct. No. 19STCV05084) |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

Santiago Law Group, Artemio Santiago; Benedon & Serlin, Douglas G. Benedon and Wendy S. Albers for Defendant, Cross-complainant and Appellant.

Bryan Cave Leighton Paisner, Keith D. Klein, Glenn J. Plattner and Kristy A. Murphy for Plaintiff, Cross-defendant and Respondent.

_____

Defendant and cross-complainant Randy Andrews appeals from the trial court's order denying his motion to compel arbitration of the action filed against him by his former employer, U.S. Security Associates, Inc. (U.S. Security), and his cross-complaint. We conclude the trial court properly denied Randy Andrews' motion because a statutory exception to the enforcement of the arbitration provision applies. Specifically, U.S. Security is a party to a pending action with third parties not bound by the arbitration agreement that may result in conflicting rulings on a common issue of law or fact within the meaning of Code of Civil Procedure section 1281.2, subdivision (c).[1] Accordingly, we affirm.

## BACKGROUND

### A.    U.S. Security Sues Andrews Global Security, Inc., Don Anderson, and George Casillas

On October 26, 2018, U.S. Security filed a complaint against Andrews Global Security, Inc. (Andrews Global) and U.S. Security's former employees Don Anderson and George Casillas (the Andrews Global Litigation). U.S. Security alleged that Anderson and Casillas solicited its customers and employees and misappropriated its confidential information and trade secrets.

_____

[1] All unspecified statutory references are to the Code of Civil Procedure.

2

U.S. Security further alleged Andrews Global participated in Anderson's and Casillas's unlawful conduct and interfered with Anderson's and Casillas's employment agreements.

According to U.S. Security's complaint, prior to Anderson's position as president of special events at Andrews Global, Anderson had been employed with U.S. Security for over 15 years and served as its senior vice president of special events and training. Prior to Casillas's positions as vice president of special events and director of recruiting for Andrews Global, he had served as an employee and director for U.S. Security for approximately one year.

U.S. Security sued for breach of Anderson's written contract, breach of Casillas's written contract, breach of fiduciary duty against Casillas, breach of duty of loyalty against Casillas, misappropriation of trade secrets against all defendants, intentional interference with prospective economic advantage against all defendants, intentional interference with at-will employment relations against Casillas and Andrews Global, intentional interference with contractual relations against Andrews Global, conversion against Casillas and Andrews Global, and unlawful and unfair business practices under Business and Professions Code section 17200 et seq. against all defendants.

U.S. Security attached both Anderson's and Casillas's employment agreements to its complaint. Neither agreement includes an arbitration provision. In addition to damages, U.S. Security sought prohibitory and mandatory injunctions. U.S. Security's complaint in the Andrews Global Litigation does not mention Randy Andrews.

**B.     U.S. Security Sues Randy Andrews**

On February 15, 2019, U.S. Security filed a complaint for damages and injunctive relief against Randy Andrews, initiating the instant matter (the Andrews Litigation).  According to the complaint, Randy Andrews founded Andrews International, Inc. in 1988.  U.S. Security acquired Andrews International in 2012.  Following the acquisition, Randy Andrews remained the chief executive officer and president of Andrews International and became the chief security officer of U.S. Security.

U.S. Security alleged that in March 2018, Andrews Global filed articles of incorporation and a statement of information with the California Secretary of State.  The documents identified Randy Andrews' son, Lee Andrews, as Andrews Global's chief executive officer, secretary, chief financial officer, agent for service of process, and as a director.  The Andrews Global website, however, identified Randy Andrews as its chief executive officer and founder.  Yet, U.S. Security alleged, in communications with U.S. Security about Andrews Global, Randy Andrews "feigned ignorance."

Randy Andrews resigned from U.S. Security in July 2018, and U.S. Security deemed his last day of work to be September 24, 2018.

U.S. Security alleged Randy Andrews solicited its employees and clients and misappropriated its confidential information, trade secrets, and company property for the purpose of establishing Andrews Global, a competing company.  In particular, U.S. Security alleged Randy Andrews enticed several key U.S. Security executives to join Andrews Global, including Casillas and Anderson.  Substantially similar to its claims in the Andrews Global Litigation, U.S. Security sued Randy Andrews

4

for breach of written contract, breach of fiduciary duty, breach of duty of loyalty, misappropriation of trade secrets, intentional interference with prospective economic advantage, intentional interference with at will employment relations, intentional interference with contractual relations, unlawful and unfair business practices pursuant to Business and Professions Code section 17200 et seq., and civil conspiracy.

U.S. Security attached to the complaint a copy of Randy Andrew's October 4, 2016 employment agreement. The agreement included an arbitration clause at section 8 as follows: "8. <u>Arbitration of Disputes</u>. Except as set forth below in this [s]ection 8, all disputes, claims, or controversies arising out of or relating to this Agreement or the negotiation, validity or performance hereof that are not resolved by mutual agreement shall be resolved solely and exclusively by binding arbitration to be conducted before JAMS or its successor (the '*Arbitrator*'). The arbitration shall be held in Los Angeles, California before a mutually agreed to single arbitrator and shall be conducted in accordance with the Arbitrator's then current rules and procedures applicable to employment arbitration. . . . [¶] This [s]ection 8 applies equally to requests for temporary, preliminary or permanent injunctive relief, except that in the case of temporary or preliminary injunctive relief any party may proceed in a California court without prior arbitration for the limited purpose of avoiding immediate and irreparable harm. The provisions of this [s]ection 8 shall be enforceable in any court of competent jurisdiction." (Bold omitted.)

## C. The Trial Court Relates the Andrews Global and Andrews Litigations

On March 12, 2019, U.S. Security filed a notice of related case. U.S. Security alleged the two matters involve the same parties and are based on the same or similar claims; arise from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact; and are likely for other reasons to require substantial duplication of judicial resources if heard by different judges. No party objected to the notice of related case, and on March 27, 2019, the matters were related.

## D. Randy Andrews' Cross-complaint in the Andrews Litigation

On March 20, 2019, Randy Andrews filed a cross-complaint against U.S. Security in the Andrews Litigation. Among other things, Andrews alleged that U.S. Security failed to pay bonuses due to him and thereby breached his October 4, 2016 employment agreement. He further alleged that after he reported to U.S. Security its violations of, or noncompliance with, local, state, and/or federal laws, U.S. Security retaliated against him by denying him the means to perform his job and thereby constructively discharged him. He also sued for breach of his subscription agreement, breach of his October 4, 2016 employment agreement, breach of the implied covenant of good faith and fair dealing, wrongful discharge, retaliation, failure to pay wages at termination, waiting time penalties, and unfair business practices pursuant to Business and Professions Code section 17200 et seq. He requested a jury trial.

6

**E.   Randy Andrews' Answer in the Andrews Litigation**

On March 29, 2019, Randy Andrews filed his answer to U.S. Security's complaint. He stated 36 affirmative defenses. None of them referred to his contractual right to arbitration.

**F.   Pleading Challenges to Randy Andrews' Cross-complaint**

On April 30, 2019, U.S. Security demurred to Randy Andrews' cross-complaint. The trial court sustained the demurrer with leave to amend. The trial court ordered Randy Andrews "to set forth as to each breach of contract cause of action the contract in full (by attaching it), just what term or terms have been breached, and when, and in what manner and with just what damage has flowed from each alleged breach . . . ."

Then, on July 11, 2019, U.S. Security moved to strike Randy Andrews' amended cross-complaint. U.S. Security argued Randy Andrews attached the contracts to the amended cross-complaint, but failed to modify the allegations as the trial court ordered. On August 1, 2019, Randy Andrews filed a notice of nonopposition to the motion to strike and requested leave to amend his cross-complaint to comply with the trial court's order. In a declaration, Randy Andrews' attorney stated he misunderstood the trial court's order to require either that Randy Andrews append the agreements to the cross-complaint or to plead the breach of contract causes of action with more specificity—not both.

On August 14, 2019, the trial court heard the motion to strike and ordered Randy Andrews to "redo the [a]mended [c]ross-[c]omplaint within [10] days."

7

## G.    Motion to Compel Arbitration

On August 5, 2019—four days after Randy Andrews sought leave to amend his cross-complaint to comply with the trial court's order to allege his breach of contract claims with more specificity—Randy Andrews filed his motion to compel both the Andrews Litigation and the Andrews Global Litigation to arbitration.  In his motion, Randy Andrews argued the arbitration provision applied to the causes of action in the complaint and cross-complaint in the Andrews Litigation.

Andrews further argued the claims in the Andrews Global Litigation should also be compelled to arbitration under theories of equitable estoppel and agency.  Specifically, "[U.S. Security]'s claims in its related actions against [Randy] Andrews [and the AGS Litigation] are essentially the same and are sufficiently intertwined with the contractual obligations under which [U.S. Security] brings its claims against [Randy] Andrews such that it is equitable to compel arbitration of the claims against [Andrews Global], Anderson, and Casillas as well."  As to agency, Randy Andrews argued U.S. Security allegations in its complaints demonstrated the defendants were agents of one another.  Thus, he argued, even though the Andrews Global defendants were nonsignatories to an arbitration agreement, it was equitable to compel all the parties and claims to arbitration.

In support of Randy Andrews' motion, his counsel filed a declaration stating that "[a]t the time of the filing of Randy Andrews' [c]ross-[c]omplaint and [a]nswer, neither myself nor my co-counsel were aware that there was a valid and enforceable arbitration provision agreed to by Mr. Andrews and [U.S. Security], and my office therefore filed Mr. Andrews' [c]ross-[c]omplaint and [a]nswer simultaneously in order to avoid the

8

risk of potentially waiving any cross-claims Mr. Andrews might have and to avoid the need to apply for leave at a later time to file a cross-complaint on Mr. Andrews' behalf." Randy Andrews also filed a declaration in support of his motion to compel arbitration. His declaration was silent as to when he discovered or remembered the existence of the arbitration provision.

In opposition to the motion to compel arbitration, U.S. Security argued that two exceptions applied to enforcing the arbitration provision against Randy Andrews. First, section 1281.2, subdivision (c), provides that arbitration is not required if a court determines that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . ." Second, Randy Andrews waived his right to arbitrate by substantially invoking the litigation machinery in ways inconsistent with the right to arbitrate.

As to the Andrews Global Litigation, U.S. Security argued that neither equitable estoppel nor agency principles applied to compel the Andrews Global defendants to arbitration. Citing *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 229-230, U.S. Security argued that equitable estoppel required "the claims asserted against the nonsignatories be intertwined ***with the agreement*** containing the arbitration clause." However, the complaint in the Andrews Global Litigation did not refer to Randy Andrews' employment agreement or any obligation contained therein. Further, U.S. Security argued that it never alleged or conceded that Andrews Global, Anderson, Casillas and Randy Andrews were agents of one another with respect to

Randy Andrews' breach of his employment agreement. U.S. Security alleged Randy Andrews breached his employment agreement in his individual capacity, not through any agent. Thus, U.S. Security argued that rather than compel both matters to arbitration, the trial court should consolidate the matters and deny the motion to compel arbitration.

In reply, Randy Andrews argued he did not waive his right to arbitration. Far from availing himself of the litigation machinery, Randy Andrews contended he merely defended himself against a "blitzkrieg" of discovery and motions. He did not serve his own discovery. Randy Andrews further argued U.S. Security could not establish prejudice. As to the Andrews Global Litigation, Randy Andrews again argued equitable estoppel and agency principles applied.

On August 26, 2019, Randy Andrews filed a second amended cross-complaint.

Randy Andrews' motion to compel arbitration was scheduled for hearing on August 29, 2019. The trial court indicated its tentative was to deny the motion and invited Randy Andrews' counsel to present his argument. Randy Andrews' counsel stated it assumed the basis for the trial court's denial was waiver. The trial court responded, "Yes. I think there's too much done in this case, including, but not limited to, the still pending mandamus action to say now that it should go to arbitration. All of those discovery issues with were—involved a voluminous presentation by both sides, expensive to put together and time-consuming for the court and for the parties,[2] and

---

[2] According to a declaration filed by U.S. Security, on December 18, 2018, the Andrews Global defendants brought a motion to strike U.S. Security's claim for punitive damages,

10

there's been a great deal of activity in the case.  I notice that [defendant's] counsel say 'we were not aware of the employment agreement,' but Mr. Andrews certainly was, and he doesn't put in his declaration he wasn't aware of it.  He also had an arbitration provision in his earlier sale[s] contract with this company for arbitration.  So I think that it reflects at some level a choice not to use that arbitration right and then a decision to go in an opposite direction.  . . . [T]here's been too much expended by the other side in these related actions for me to now send it to

which the trial court denied after the hearing on February 11, 2019.

In February 2019, the Andrews Global defendants filed seven motions to quash U.S. Security's subpoenas directed to its former security guards and Andrews Global's landlord.  U.S. Security filed a notice indicating that the motions to quash the subpoenas to the security guards had become moot because it had withdrawn its subpoenas, yet the Andrews Global defendants did not take their motions off calendar.  On March 27, 2019, the trial court denied all seven of the motions to quash, noting that they had been "frivolous and without merit."

On May 10, 2019, U.S. Security filed five motions to compel further responses to written discovery, which the trial court granted in their entirety on June 5, 2019, and indicated it would have awarded sanctions if U.S. Security had sought them.

On June 4, 2019, U.S. Security filed motions to compel production of documents by Andrews Global.  The trial court granted the motions on June 26, 2019.

On July 30, 2019, U.S. Security filed four additional motions to compel discovery responses and sought sanctions against the Andrews Global defendants.  The motions were scheduled for hearing on August 29, 2019.  The record does not reflect the outcome of these four motions.

11

arbitration." The trial court stated it denied the motion to compel "for all the reasons stated in the opposition papers."

In its August 29, 2019 minute order, the trial court also stated, "As to [Randy Andrews'] [m]otion to [c]ompel [a]rbitration, the [m]otion is denied, inter alia, for all the reasons stated in the opposition papers."

On September 6, 2019, Randy Andrews timely filed a notice of appeal concerning the trial court's ruling denying his motion to compel arbitration. The Andrews Global defendants also filed a notice of appeal in the Andrews Global Litigation, *U.S. Security Associates, Inc. v. Andrews Global Security, Inc., et al.*, B300688, concerning the trial court's denial of Randy Andrews' motion to compel arbitration. On November 13, 2019, we consolidated the two appeals. However, that same day, the Andrews Global defendants abandoned their appeal. Accordingly, we review only the trial court's denial of Randy Andrews' motion to compel arbitration of the Andrews Litigation.

## DISCUSSION

Based on the language in the trial court's minute order that it denied the motion to compel arbitration for the reasons stated in U.S. Security's opposition, Randy Andrews argues that neither of the two exceptions discussed therein applies. First, he argues that the third-party exception articulated in section 1281.2, subdivision (c), is inapplicable because the Andrews Global defendants are not third parties within the meaning of the statute. Second, he argues he did not waive his right to compel arbitration.

We hold the defendants in the Andrews Global Litigation are third parties and the trial court did not abuse its discretion in denying the motion to compel on this basis. Because this holding

12

is dispositive, we need not consider whether the trial court erred in finding Randy Andrews waived his right to compel arbitration.

## A.     Standard of Review and Legal Framework

A party to an arbitration agreement need not be compelled to arbitrate if the trial court determines that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . ." (§ 1281.2, subd. (c).)  "[W]hether a defendant is in fact a third party for purposes of . . . section 1281.2, subdivision (c), is a matter of law subject to de novo review.  [Citations.]  If the third party exception applies, the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406 (*Laswell*).)

For purposes of section 1281.2, the term "third party" means a party that is not bound by or entitled to enforce the arbitration agreement.  (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612; *Laswell*, *supra*, 189 Cal.App.4th at p. 1407.)  However, "nonparties to arbitration agreements are allowed to enforce those agreements where there is sufficient identity of parties.  For example, defendants who are not signatories to an arbitration agreement, but who are acting as agents for the party to the arbitration provision, may be allowed to enforce the arbitration clause." (*Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1021.)  In addition, nonsignatories may enforce an arbitration provision under an equitable estoppel doctrine.  " ' " '[T]he equitable estoppel doctrine applies when a party has signed an agreement

13

to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are " 'based on the same facts and are inherently inseparable' " from arbitrable claims against signatory defendants.' " ' [Citation.]" (*Laswell*, *supra*, at p. 1407.)

On appeal, Randy Andrews does not challenge the trial court's implicit finding that the two matters involve a "transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) Rather, Randy Andrews contends that under principles of equitable estoppel and agency, the Andrews Global defendants are not third parties within the meaning of section 1281.2, subdivision (c). We disagree.

"In *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause.* In other words, allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement." (*Goldman v. KPMG, LLP, supra*, 173 Cal.App.4th at p. 219, fn. omitted; see *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1357 ["The question is not whether the actions are related, but whether the action against a nonsignatory to the arbitration agreement is rooted in the contract containing the arbitration agreement. To be sure, there are common questions of law and fact in both actions, including, perhaps, interpretation

14

of the policy agreements. But commonality of issues is a far cry from claims grounded in, and 'inextricably intertwined with,' the arbitration agreement"].) "The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract." (*DMS Services, LLC*, *supra*, at p. 1354.)

On appeal, Randy Andrews points to U.S. Security's acknowledgment in its notice of related cases that the two matters arise from the same incidents and events and that Randy Andrews, Anderson, and Casillas are officers of Andrews Global and are acting in concert with one another and/or for the benefit of Andrews Global. Randy Andrews also notes that the acts U.S. Security alleges Randy Andrews committed in concert with other persons coincides with the activities alleged against Anderson and Casillas in the Andrews Global Litigation. Further, Randy Andrews argues, in its complaint against him, U.S. Security alleged Doe defendants abetted his scheme by setting up and financing a competing business and such Doe defendants were the agents, employees, joint venturers, etc., of the remaining defendants and acted within the scope of their agency and employment in committing the acts alleged in the complaint. U.S. Security also alleged Randy Andrews was the mastermind of a conspiracy to damage U.S. Security, runs Andrews Global, and solicited and recruited Anderson and Casillas to work at Andrews Global.

The above allegations are not sufficient to demonstrate that the misconduct by the Andrews Global defendants is founded in or intimately connected with the obligations of Randy Andrews' employment agreement. (*DMS Services, LLC v. Superior Court*,

15

*supra*, 205 Cal.App.4th at p. 1357; *Goldman v. KPMG, LLP*, *supra*, 173 Cal.App.4th at p. 219.) As U.S. Security correctly argues, Randy Andrews does not identify any cause of action in the Andrews Global Litigation that is dependent upon the obligations in his employment agreement. The obligations for which U.S. Security sues Anderson and Casillas arise from Andersons's and Casillas's own employment agreements and California law—not Randy Andrews' agreement. Accordingly, equitable estoppel did not apply.

Further, the allegations Randy Andrews identifies do not allege that Anderson, Casillas, and Andrews Global acted as Randy Andrews' agents. While U.S. Security alleged in its complaint in the Andrews Litigation that Doe defendants acting as Randy Andrews' agents aided and abetted him in the acts alleged therein, the Doe defendants are identified as defendants with "fictitious names because [U.S. Security] is unaware of the true names, capacities or identities." But at the time U.S. Security filed its complaint against Randy Andrews, it knew the identities and purported wrongful acts of Anderson and Casillas. U.S. Security had already filed the complaint against them in the Andrews Global Litigation. Accordingly, the allegation that Doe defendants acted as Randy Andrews' agents does not apply to Anderson and Casillas. Nor do we find the allegation that Randy Andrews solicited Anderson and Casillas to work for Andrews Global sufficient to establish an agency relationship. This is not a situation where "it would be unfair to defendants to allow [the plaintiff] to invoke agency principles when it is to his advantage to do so, but to disavow those same principles when it is not." (*Thomas v. Westlake*, *supra*, 204 Cal.App.4th at p. 614.)

16

Randy Andrews argues that *Laswell* requires a different result. We disagree.

In *Laswell*, Laswell, by and through her daughter, under a power of attorney, alleged she had received improper care and treatment at a 24-hour health facility, Country Villa Seal Beach Healthcare Center. (*Laswell*, *supra*, 189 Cal.App.4th at p. 1402.) "In her complaint, she named as [the] defendants [1] AG Seal Beach, LLC, the licensee and operator of the health facility doing business as Country Villa Seal Beach Healthcare Center; [2] AG Facilities Operations, LLC, the owner of AG Seal Beach, LLC, and Country Villa Seal Beach Healthcare Center; and [3] Country Villa Service Corporation, doing business as Country Villa Health Services, the management company of Country Villa Seal Beach Healthcare Center in charge of the day-to-day operation, patient care and maintenance of the health facility . . . ." (*Ibid*.) "According to the complaint, while Laswell resided at Country Villa Seal Beach Healthcare Center, she was neglected, abandoned and abused . . . . Laswell alleged causes of action against all [the] defendants for elder abuse under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.); negligence; willful misconduct; and violation of Penal Code section 368, and an additional cause of action against AG Seal Beach, LLC, as the licensee of the health facility, for violation of Health and Safety Code section 1430, subdivision (b)." (*Ibid*., fn. omitted.)

The "arbitration agreement provided for arbitration of 'any and all disputes or claims . . . arising out of the provision of services by the [f]acility,' defined as Country Villa Seal Beach Healthcare Center, or that 'allege violations of the Elder Abuse and Dependent Adult Civil Protection Act.' " (*Laswell*, *supra*, 189

17

Cal.App.4th at p. 1403.) *Each of the defendants, however, were Country Villa Seal Beach Healthcare Center-related entities: the licensee and operator, the owner, and the manager.* (*Id.* at p. 1407.) "Further, the substance of Laswell's allegations is that all [of the] defendants are responsible for the improper care that she received while she resided at Country Villa Seal Beach Healthcare Center, demonstrating her claims against all [the] defendants are based on the same facts and theory and are inherently inseparable." (*Ibid*.)

The instant matter is distinguishable from *Laswell*. U.S. Security can and did allege—especially with respect to the individual defendants—that each violated their own independent duties to U.S. Security that arose under their respective agreements and California law. The causes of action were not "inherently inseparable" with those alleged against Randy Andrews. Accordingly, *Laswell* is inapposite. We conclude each of the Andrews Global defendants are third parties for purposes of section 1281.2, subdivision (c).

We also find the trial court did not abuse its discretion in denying Randy Andrews' motion to compel arbitration pursuant to the third party exception articulated in section 1281.2, subdivision (c). Neither party disputes the two matters arise out of a series of related transactions or that there is a risk of conflicting rulings on a common issue of law or fact. (§ 1281.2, subd. (c).)

Having determined the trial court could properly deny Randy Andrews' motion to compel on this basis, we need not consider whether he waived his right to compel arbitration.

18

**DISPOSITION**

The order is affirmed.  Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED

SINANIAN, J.*

We concur:

CHANEY, J.

BENDIX, Acting P. J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.